**In the United States District Court**
**For the Western District of Texas**
**Midland/Odessa Division**

| | | |
|---|---|---|
| **DOH Oil Company and** | § | |
| **Craig A. Johnson,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **Civ. Action No.: 7:22-cv-00058** |
| | § | |
| **Aaron Kahle; Steve Kerrigan;** | § | |
| **Stephen Yerkovich;** | § | |
| **Ridgefield Permian Minerals, LLC;** | § | **Jury Trial Demanded** |
| **Barbara Sue O'Neil, Individually and** | § | |
| **as Co-Trustee of the O'Neil Family** | § | |
| **Mineral Trust; Richard K. O'Neil,** | § | |
| **Individually and as Co-Trustee of the** | § | |
| **O'Neil Family Mineral Trust;** | § | |
| **C. Megan Brenner; Robert Pike;** | § | |
| **David Pike; Jim Hall; Donna Larson;** | § | |
| **Albert Benjamin Ramsey; Victor Green;** | § | |
| **Laura Holmes Peters; and** | § | |
| **Dawn Enright Gee,** | § | |
| | § | |
| *Defendants.* | § | |

---

## Original Complaint

---

Plaintiffs DOH Oil Company and Craig A. Johnson file this original complaint against Defendants Aaron Kahle; Steve Kerrigan; Stephen Yerkovich; Ridgefield Permian Minerals, LLC; Barbara Sue O'Neil, Individually and as Co-Trustee of the O'Neil Family Mineral Trust; Richard K. O'Neil, Individually and as Co-Trustee of the O'Neil Family Mineral Trust; C. Megan Brenner; Robert Pike; David Pike; Jim Hall; Donna Larson; Albert Benjamin Ramsey; Victor Green; Laura Holmes Peters; and Dawn Enright Gee.

## I. Parties

1.      Plaintiff DOH Oil Company is a Texas general partnership with its principal place of business located in Sweetwater, Nolan County, Texas.

2.      Plaintiff Craig A. Johnson is an individual residing in Austin, Travis County, Texas.

3.      Defendant Aaron Kahle is an individual residing in Texas, with an address at 4942 Dumfries Drive, Houston, Texas 77096.

4.      Defendant Steve Kerrigan is an individual residing in Texas, with an address at 2929 Westheimer Road, Apt. 202, Houston, Texas 77098.

5.      Defendant Stephen Yerkovich is an individual residing in Texas, with an address at 10042 Doliver Drive, Houston, Texas 77042.

6.      Defendant Ridgefield Permian Minerals, LLC, is a Delaware limited liability company with its principal place of business located at 1333 W. Loop South, Suite 1333, Houston, Texas 77027. It may be served through its registered agent, Aaron Kahle, at 1333 W. Loop South, Suite 1333, Houston, Texas 77027.

7.      Defendant Barbara Sue O'Neil, Individually and as Co-Trustee of the O'Neil Family Mineral Trust, is an individual residing in Oklahoma, with an address at 5654 S. Pittsburg Avenue, Tulsa, Oklahoma 74135.

8.      Defendant Richard K. O'Neil, Individually and as Co-Trustee of the O'Neil Family Mineral Trust, is an individual residing in Oklahoma, with an address at 5654 S. Pittsburg Avenue, Tulsa, Oklahoma 74135.

9.      Defendant C. Megan Brenner is an individual residing in Oklahoma, with an address at 1722 S. Carson Avenue, Apt. 1701, Tulsa, Oklahoma 74119.

10.     Defendant Robert Pike is an individual residing in Michigan, with an address at 114 E. John Street, Newberry, Michigan 49868.

11.     Defendant David Pike is an individual residing in Michigan, with an address at 7415 Bauchat Drive, Brighton, Michigan 48116.

12. Defendant Jim Hall is an individual residing in Texas, with an address at 2804 Yaupon Place, Amarillo, Texas 79124.

13. Defendant Donna Larson is an individual residing in Texas, with an address at 13445 Bill Hickock Road, Apt. 417, Roanoke, Texas 76262.

14. Defendant Albert Benjamin Ramsey is an individual residing in Texas, with an address at 511 S. Post Oak Lane, Apt. 4A, Houston, Texas 77056.

15. Defendant Victor Green is an individual residing in South Carolina, with an address at 2123 Newberry Landing Circle, Newberry, South Carolina 29108.

16. Defendant Laura Holmes Peters is an individual residing in California, with an address at 1327 Dwyer Road, Oakville, California 94562.

17. Defendant Dawn Enright Gee is an individual residing in California, with an address at 819 Macmahan Way, Petaluma, California 94954.

## II. Jurisdiction

18. This Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964 because this action arises from violations of 18 U.S.C. § 1962. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

## III. Venue

19. Venue is proper under 28 U.S.C. § 1391 because the property at issue is situated within this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## IV. Factual Background

20. DOH Oil Company and Craig A. Johnson own oil, gas, and mineral interests in Martin, Ward, and Loving Counties, Texas.

21.     Defendants have unlawfully participated in a fraudulent and extortionate RICO enterprise to force DOH and Johnson to convey a portion of their oil, gas, and mineral interests to Ridgefield Permian Minerals, LLC and other Defendants.

**A.     DOH acquired the Martin County interests in 1995.**

22.     The Martin County interests were sold to DOH following a 1992 tax foreclosure suit styled *Stanton I.S.D., et al. v. William Wilkie, et al.*, Cause No. 4843, in the 118th Judicial District Court of Martin County, Texas. The foreclosure judgment in that case was signed on December 5, 1994. It foreclosed upon all interest owned by William Wilkie and Louise Wilkie and their successors in the mineral estate beneath Section 37, Block 38, Township 1 North, Martin County ("Section 37").

23.     A sheriff's deed conveying the foreclosed interests in Section 37 to Stanton ISD, Trustee was executed on August 17, 1995, and recorded on August 30, 1995. The sheriff's deed conveyed to Stanton ISD, Trustee, all of the tax suit defendants' estate, right, title and interest in the minerals beneath Section 37 as of the date of the judgment or anytime afterwards.

24.     By special warranty deed, dated and recorded on December 1, 1995, Stanton ISD, Trustee, conveyed the same interests to DOH.

**B.     DOH and Johnson acquired the Ward County interests in 1998.**

25.     The Ward County interests were subject to a 1997 tax foreclosure suit styled *Ward County, et al. v. Edith Knight Estate, et al.*, Cause No. 97-10-18864-CVW, in the 143rd Judicial District Court of Ward County, Texas. The foreclosure judgment was signed on December 5, 1997. It foreclosed upon all interest in the mineral estate owned by Hennessy & Spry Partnership, Harold W. & Willa L. Ormsby, and J. F. Bianconi, and their successors in the southwest quarter and northeast quarter of Section 95, Block 34, H&TC Ry. Co. Survey ("Section 95").

26.     A sheriff's deed conveying the interests in the southwest quarter of Section 95 to DOH was executed on August 14, 1998, and recorded on August 19, 1998. The sheriff's deed conveyed to DOH all of the tax suit defendants' estate, right, title and interest in the minerals beneath the southwest quarter of Section 95 as of the date of the judgment or anytime afterwards.

27.     A second sheriff's deed conveying the interests in the northeast quarter of Section 95 to DOH was likewise executed on August 14, 1998, and recorded on August 19, 1998. It conveyed to DOH all of the tax suit defendants' estate, right, title and interest in the minerals beneath the northeast quarter of Section 95 as of the date of the judgment or anytime afterwards.

28.     DOH subsequently conveyed an undivided one-half of its interests in the southwest quarter and northeast quarter of Section 95 to Craig A. Johnson.

**C.     DOH acquired the Loving County interests in 2001.**

29.     The Loving County mineral interests were subject to a 2000 tax foreclosure suit styled *Loving County, et al. v. Carol Ann Brown, et al.*, Cause No. 00-01-707, in the 143rd Judicial District Court of Loving County, Texas. The tax foreclosure judgment in that case was signed on December 19, 2000. It foreclosed upon all interest in the mineral estate owned by Lula B. Eades and her successors in Section 3, Tract C-27, PSL Survey ("Section 3"); Florence Kingsbery and her successors in Section 13, Block C-26, PSL Survey ("Section 13"); and Samuel Jack Brenner, R. E. Abbott, and E. W. & Ruth Reed, and their successors in Section 14, Block C-26, PSL Survey ("Section 14"). The tax judgment and order of sale were recorded in the Official Public Records of Loving County on May 26, 2016.

30.     A sheriff's deed conveying the Section 13 and Section 14 interests to DOH was executed on July 5, 2001, and recorded on July 20, 2001. The sheriff's deed conveyed to

DOH all of the tax suit defendants' estate, right, title and interest in the minerals beneath Section 13 and Section 14 as of the date of the judgment or anytime afterwards.

31.    A second sheriff's deed conveying the Section 3 interests to DOH was executed on July 5, 2001, and recorded on July 20, 2001. It conveyed to DOH all of the tax suit defendants' estate, right, title and interest in the minerals beneath Section 3 as of the date of the judgment or anytime afterwards.

32.    Since becoming record owners more than two decades ago, DOH and Johnson have paid the property taxes on these interests. DOH and Johnson have received bonuses and signed leases and division orders covering their interests. Their interests have been recognized by the operators of the oil and gas wells that produce them. And until recently, DOH and Johnson received their share of production revenue from those wells.

**D.    Ridgefield's business is soliciting mineral owners to sell their interests.**

33.    Ridgefield Permian Minerals, LLC buys and sells mineral interests in the Permian Basin area of West Texas.

34.    Ridgefield's mineral acquisition process typically begins with its Director of Land and Legal and general counsel Aaron Kahle identifying areas with proven oil and gas production for potential acquisitions.

35.    Ridgefield's CEO Steve Kerrigan then reviews the financial viability of acquiring interests in those areas.

36.    Ridgefield's Director of Business Development Stephen Yerkovich also assists in the valuation of Ridgefield's acquisitions.

37.    Once a specific area is targeted for acquisition, Kahle researches mineral title using online records and an electronic database to identify potential owners of the mineral interests.

38.    Ridgefield then mails out generic solicitation letters offering to purchase the interests of the potential owners at a certain price per acre.

39.     Ridgefield also contracts with third-party land brokers to communicate with the potential sellers and negotiate and purchase their interests on Ridgefield's behalf.

40.     Kahle and Yerkovich regularly communicate with the outside brokers on Ridgefield's behalf.

41.     If a potential seller is interested, Kahle provides the broker with a mineral deed and instructs him to forward it to the seller.

42.     Once the parties are close to reaching a deal, the contract land broker performs a higher level of title diligence to ensure that Ridgefield is acquiring good title. This usually includes sending a landman to the county courthouse to conduct an "on-the-ground" review of the official deed records, probate records, and district court records. The third-party broker also assists in resolving any curative title issues before closing.

43.     When the terms of the deal are agreed upon, the seller executes the mineral deed and emails the broker a scanned copy of it.

44.     The broker then emails the scanned deed to Ridgefield.

45.     The purchase payment to the seller is not authorized until Kahle signs off on title and Kerrigan signs off on financing.

46.     Once approved, Ridgefield sends the purchase payment to the seller by check or wire transfer.

47.     Yerkovich typically sends copies of the processed checks to Ridgefield's broker.

48.     After the seller receives the payment, it mails the original executed deed to Ridgefield's broker.

49.     Kahle instructs the broker to mail the deed to the appropriate county clerk's office for recording in the public records.

**E. Ridgefield acquired its first mineral deed clouding DOH's title for $150,000, based on Aaron Kahle's mistaken legal advice.**

50. In late 2017 or early 2018, Kahle and Kerrigan became interested in acquiring mineral interests in certain sections of land in Loving County. One of these was Section 14, in which DOH acquired the mineral interests of Samuel Jack Brenner, R. E. Abbott, and E. W. & Ruth Reed under its 2001 sheriff's deed.

51. Kahle identified potential interest owners in Section 14 and instructed Tomahawk Land Resources, one of Ridgefield's contract land brokers, to contact them and negotiate the acquisition of their interests.

52. Ridgefield also sent generic solicitation letters to the potential sellers.

53. These potential sellers included the foreclosed owners in Section 14 or their heirs.

54. At the time Kahle instructed Tomahawk to contact the potential sellers, he and Ridgefield were not aware of the Loving County tax foreclosure judgment.

55. The first potential seller that Ridgefield contacted in Section 14 was California resident Gary Reed, Trustee of the of the 1994 Earl & Ruth Reed Revocable Trust ("Reed Trust").

56. Kahle had identified the Reed Trust as the successor to E. W. & Ruth Reed.

57. In a solicitation letter dated February 14, 2018, Ridgefield offered $12,000 per net mineral acre to purchase all of the Reed Trust's interest in Section 14, which Ridgefield stated was 10 net mineral acres.

58. At the time of this letter, Kahle and Ridgefield were not aware of the tax foreclosure judgment and sheriff's deed covering E. W. & Ruth Reed's interest.

59. On February 23, 2018, nine days after the offer letter was sent, Gary Reed contacted Ridgefield's CEO Steve Kerrigan and expressed a willingness to sell.

60. Kerrigan then passed Reed off to Jackson McGraw, a Tomahawk land broker, to confirm title and close the deal.

61.     Kerrigan was eager to close, stating "this is our new favorite thing" and "[Reed] seemed willing enough that I didn't want to sit on it."

62.     Ridgefield's closing with the Reed Trust occurred quickly. On February 26, 2018, Kerrigan approved a closing price of $15,000 per net mineral acre. On February 27, 2018, Gary Reed executed a mineral deed purporting to convey all of the Reed Trust's mineral interest in Section 14 to Ridgefield. He then emailed a copy of the signed deed to McGraw and overnighted the original to Ridgefield, even though Ridgefield still had not confirmed title or approved the closing.

63.     On February 28, 2018, Kahle gave McGraw instructions concerning Tomahawk's on-the-ground title verification of the Reed Trust's interest, which had not been completed.

64.     On March 6, 2018, Tomahawk's general counsel John Hefley sent an email to Aaron Kahle and Steve Kerrigan, informing them that Tomahawk had located the tax foreclosure judgment against E. W. Reed and Ruth Reed in Section 14. Hefley sent Kahle the foreclosure judgment because he thought it covered the Reeds' mineral interests in Section 14.

65.     Half an hour after receiving the tax foreclosure judgment, Kahle sent an email advising Kerrigan and Hefley that the foreclosure judgment was a non-issue. He opined that it foreclosed upon a royalty interest under an oil and gas lease that expired in the 1980s—i.e., no real property interest at all—and recommended that Ridgefield proceed to close once it received an unrelated curative instrument from Reed:

> I have seen the tax judgments- each only covered royalty interests under a well which stopped producing around 30 years ago. Since the lease covering such interest expired and new leases were taken, I do not believe the judgments affect the current mineral and royalty interest. As such, once we get the deed from Earl Reed and Ruth Reed to the

Earl Reed and Ruth Reed Revocable Trust, we can proceed with closing.[1]

66.     Kahle's initial opinion regarding the scope of the tax foreclosure judgment was careless and mistaken. The judgment explicitly states that liens exist on the delinquent taxpayer's "royalty interest(s), mineral interest(s), or underlying mineral estate(s)" listed on the judgment's Exhibit "A" and that it is foreclosing them. It further states that "in such cases in which said royalty interest(s) and mineral interest(s) have expired, lien foreclosure shall be enforced…by sale of the underlying mineral estate of each such royalty interest(s) and mineral interest(s)." The judgment's Exhibit "A" describes a number of delinquent taxpayers' interests in various tracts, including those of Lula B. Eades in Section 3, Florence Kingsbery in Section 13, and Samuel Jack Brenner, R. E. Abbott, and E. W. & Ruth Reed in Section 14.

67.     Based on Kahle's erroneous legal advice, Ridgefield proceeded to close with the Reed Trust. On March 22, 2018, Ridgefield paid the Reed Trust $150,000 for the Section 14 interest that was foreclosed upon and sold to DOH in 2001. On April 3, 2018, Ridgefield filed the mineral deed from the Reed Trust in the Official Public Records of Loving County. Because of his mistaken reading of the tax judgment, Kahle did not bother to look for the sheriff's deeds emanating from the tax sale to ascertain who presently claimed title to the foreclosed mineral interests.

68.     On April 4, 2018, Stephen Yerkovich emailed a copy of the Reed mineral deed to EOG Resources, Inc., the operator of the Section 14 wells, and asked it to hold the interest in suspense while Ridgefield was being set up on EOG Resource's pay deck.

69.     Over the next few months, Ridgefield continued making purchase offers to persons whose Section 14 interests had been foreclosed upon and sold to DOH. On

---

[1] Ridgefield voluntarily produced this communication in state court litigation, but it contends that all other attorney opinions or mental impressions concerning the tax foreclosure judgments are privileged.

May 16, 2018, Ridgefield sent Oklahoma resident Samuel Jack Brenner a letter offering $14,000 per net mineral acre for all of his mineral interest in Section 14.

70.     Ridgefield also identified Oklahoma residents Barbara Sue O'Neil and Richard K. O'Neil, Co-Trustees of the O'Neil Family Mineral Trust ("O'Neil Trust") as the successors to R. E. Abbott in Section 14. On June 20, 2018, Ridgefield offered the O'Neil Trust $12,000 per net mineral acre for all of its interest in Section 14.

71.     Neither Brenner nor the O'Neil Trust sold to Ridgefield at this time.

**F.      After realizing that DOH owned the Loving County interests, Kahle and Kerrigan devised and implemented the predatory scheme targeting DOH.**

72.     At some point over the next year, Kahle realized that his initial interpretation of the Loving County tax judgment was wrong and that the tax judgment had divested the prior owners of the mineral interests that Ridgefield was trying to acquire.

73.     In mid-2019, Kahle re-examined the public records to carry title forward from the tax foreclosure suit and determined that DOH owned the Loving County interests under its 2001 sheriff's deeds.

74.     It was around this time that Kahle and Kerrigan devised the fraudulent and extortionate RICO scheme to target DOH.

75.     The plan was for Ridgefield to acquire and record mineral deeds from the heirs of the foreclosed parties whose interests DOH had purchased at the tax sales. The participants in the scheme knew that these mineral deeds were invalid.

76.     In addition to all participants being imputed with such knowledge as a matter of law, Ridgefield, its employees and agents, and multiple grantors who signed the mineral deeds personally acknowledged that the previous owners were divested of their mineral interests in the tax foreclosures.

77.     The real purpose of acquiring and recording the mineral deeds was not to give Ridgefield record title but to fabricate the appearance of a colorable title claim, thereby clouding DOH and Johnson's valid title and tying up their property, stopping their

revenue payments and causing them substantial economic harm, and positioning Ridgefield as a purported rival title claimant for litigation.

78.     Claiming color of title under the mineral deeds, Ridgefield would then file sham lawsuits raising bogus legal challenges to DOH and Johnson's title that the prior owners had not raised in the more than two decades since the tax sales.

79.     The participants did not conduct these activities for a legitimate reason, but to extort DOH and Johnson into conveying a portion of their mineral interests to Ridgefield and other mineral grantors participating in the scheme.

80.     Despite knowing that Ridgefield's mineral deeds conveyed no title, Kahle and Kerrigan intended and expected that DOH and Johnson would convey part of their mineral interests to Ridgefield to avoid years of prolonged litigation, during which their title would remain clouded and their production revenues unpaid.

81.     The scheme was fomented by Kahle's discovery, soon after he started running title on DOH, of prior instances in which DOH and Johnson executed stipulations of interest or deeds conveying all or a portion of interests that they acquired under other sheriff's deeds back to the foreclosed owners or their heirs.

82.     Kahle and Kerrigan assumed that they could extract a similar result with their fraudulent and extortionate scheme, and that their expenditure of hundreds of thousands of dollars of Ridgefield's investors' money acquiring invalid mineral deeds from the foreclosed owners' heirs would still pay off in the end.

83.     Soon after devising the scheme, Kahle revised Ridgefield's outstanding purchase offers to Brenner and the O'Neil Trust. Knowing that Ridgefield would not get the mineral deeds at all if it reneged on its original purchase prices, Kahle offered the same price per net mineral acre as the original solicitation letters—$14,000 per net mineral acre to Brenner and $12,000 per net mineral acre to the O'Neil Trust. But this time the solicitation letters acknowledged the existence of the tax foreclosures and the new plan to file suit against DOH.

84.     On June 27, 2019, Ridgefield mailed a new letter to Brenner telling him of a "legal issue burdening your interest" in Section 14. Ridgefield offered Brenner two options: (1) sell all of his interest to Ridgefield for a flat price of $140,000, or (2) sell one-half of his interest for $70,000 and Ridgefield will "pay all legal expenses to prove your mineral interest."

85.     Brenner did not elect either option. Instead, Brenner and Ridgefield entered into an agreement on October 2, 2019, whereby Brenner would execute a mineral deed assigning one-fourth of his interest in Section 14 to Ridgefield, and Ridgefield agreed to "represent Brenner on any claims against DOH for mineral interest in the Subject Property," hire an attorney to file suit against DOH on his behalf, and pay his legal expenses. In that agreement, both Brenner and Ridgefield acknowledged that the tax foreclosure purported to cover Brenner's entire mineral interest in Section 14—not an expired royalty interest as Kahle first mistakenly opined in 2018—and that Brenner's interest was "purportedly acquired by DOH" under the sheriff's deed.

86.     Ridgefield mailed the agreement to Brenner along with a copy of a mineral deed purportedly conveying one-fourth of his interest in Section 14 to Ridgefield.

87.     Brenner executed the agreement and mineral deed on October 2, 2019, and mailed the executed originals to either Ridgefield or its broker Tomahawk.

88.     At Kahle's direction, the original executed mineral deed was delivered to the Loving County Clerk's office and recorded on October 24, 2019.

89.     Ridgefield mailed a revised offer letter to the O'Neils on July 29, 2019. This letter also expressly acknowledged that the O'Neil Trust's entire mineral interest in Section 14 was "purportedly acquired by another party in a tax foreclosure sale." Ridgefield offered the O'Neils three options: (1) sell all of the O'Neil Trust's interest in Section 14 to Ridgefield for $80,000, (2) sell one-half of its interest for $40,000 and Ridgefield would pay all of its legal expenses in subsequent litigation against DOH, or

(3) "[i]n exchange for one-third (1/3) of your mineral interest…Ridgefield will pay all legal expenses to prove your mineral interest." The O'Neils chose the second option.

90.    On August 12, 2019, Ridgefield mailed the O'Neils an agreement memorializing this deal along with a mineral deed purportedly conveying one-half of their mineral interest in Section 14 to Ridgefield. The O'Neils executed the agreement on August 20, 2019, and the mineral deed on August 26, 2019. They then mailed the executed originals to Ridgefield or its broker Tomahawk. On September 19, 2019, Ridgefield mailed the O'Neils a check for the agreed amount of $40,000 for the mineral deed. At Kahle's direction, the original executed mineral deed was delivered to the Loving County Clerk's office and recorded on January 14, 2020.

91.    Kahle also identified Colorado residents Judith Abbott and Ronald E. Abbott, Jr., as the heirs of R. E. Abbott. Defendant Barbara Sue O'Neil and Ronald Abbott, Jr. are siblings. On June 27, 2019, Ridgefield mailed the Abbotts an offer letter with the same two options it had offered Brenner at $12,000 per net mineral acre.

92.    Unlike Brenner and the O'Neils, the Abbotts elected to sign mineral deeds covering all of their right, title, and interest in Section 14 in exchange for $80,000 each and not participate in Ridgefield's sham litigation against DOH.

93.    On August 12, 2019, Ridgefield mailed Judith Abbott an agreement memorializing this deal along with a mineral deed purportedly conveying all of her mineral interest in Section 14 to Ridgefield. On September 12, 2019, Ridgefield mailed Ronald E. Abbott, Jr. an agreement and mineral deed containing the same terms. Judith Abbott signed both the agreement and mineral deed on September 5, 2019. Ronald E. Abbott, Jr. signed the mineral deed on August 27, 2019, and the agreement on September 5, 2019. The executed agreements and mineral deeds were then mailed to Ridgefield. On September 20, 2019, Ridgefield mailed each of the Abbotts a check for $80,000 for the mineral deeds. At Kahle's direction, the original executed mineral deeds were delivered to the Loving County Clerk's office and recorded on January 14, 2020.

94.     Ridgefield, Brenner, and the O'Neil Trust then entered into an engagement agreement dated September 12, 2019, with the Joyce + McFarland law firm for the firm's joint representation of them "in connection with potential litigation against DOH Oil Company relating to oil, gas, and mineral interests in Loving County, Texas." John McFarland of the Joyce + McFarland law firm mailed the engagement agreement to Brenner and emailed it the O'Neils. Brenner and the O'Neils executed the engagement letter and returned the executed versions to Ridgefield.

95.     Samuel Brenner died in 2020 after Ridgefield filed the Section 14 lawsuit against DOH.

96.     On December 1, 2020, the Joyce + McFarland firm mailed Samuel Brenner's daughter, C. Megan Brenner, an engagement agreement for the firm to represent her in the Section 14 litigation against DOH. Ms. Brenner signed the agreement and returned an executed version to the firm. On December 10, 2020, C. Megan Brenner filed a suggestion of death and substituted into the lawsuit for Samuel Brenner. C. Megan Brenner engaged Ridgefield's counsel and has participated in the sham litigation against DOH with actual knowledge of the fraudulent and extortionate scheme.

**G.     Defendants targeted DOH's interests in multiple tracts and counties.**

97.     The scheme was not limited to only DOH's interests in Section 14. Kahle and Kerrigan also targeted foreclosed interests purchased by DOH in other sections and counties, including Sections 3 and 13 of Loving County and Section 95 of Ward County.

98.     In an email to Tomahawk's Jackson McGraw dated October 7, 2019, Kahle referred to the scheme as the "Tax Foreclosure project."

99.     As with Section 14, Tomahawk was the broker tasked with contacting and negotiating deals with the heirs of the foreclosed owners in these other sections of the Tax Foreclosure Project.

100. On December 11, 2019, Kahle sent McGraw an email with the subject line "Spreadsheets for DOH Oil Prospects." In it, Kahle informs McGraw that he created a spreadsheet of "tax foreclosure opportunities against DOH Oil." Kahle also acknowledges that the plan is to commence serial litigation against DOH once Ridgefield secures mineral deeds from "one or two" foreclosed owners' heirs:

> As we discussed yesterday, I created a spreadsheet containing only the tax foreclosure opportunities against DOH Oil. See attached- there is a separate tab for each of the prospects. Our goal is to have at least one or two interests secured before we file suit. Hope this is helpful- please review and let me know if you have any questions.

101. The spreadsheet included information on the purported successors of Florence Kingsbury in Section 13 of Loving County, the purported successors Lula B. Eades in Section 3 of Loving County, and the purported successors of Hennessy & Spry Partnership, Harold W. & Willa L. Ormsby, and J. F. Bianconi in Section 95 of Ward County. DOH acquired the interests of all of these persons under its sheriff's deeds.

102. Ridgefield's process for locating and negotiating for mineral deeds in the other sections of the Tax Foreclosure Project was generally the same as in Section 14. In September and October 2019, Ridgefield mailed out solicitation letters to the persons Kahle had identified as heirs of the foreclosed owners in Sections 3, 13, and 95. The letters stated that the owner's interests "are not currently being recognized" by the operators and were "subject to potential expensive litigation." Tomahawk then contacted these persons and negotiated the terms of the deal, including whether the grantor would sign a mineral deed covering all of its interest or a portion of it and then participate in Ridgefield's subsequent litigation against DOH.

103. Ridgefield's purchase offers in Sections 3, 13, and 95 showed that it knew that its mineral deeds were worthless. Ridgefield's initial solicitation letters in Section 14, which it sent in 2018 before Kahle realized that the foreclosure had divested the prior owners, committed Ridgefield to a much higher valuation of mineral acreage in Section

14—$12,000 to $14,000 per net mineral acre. Ridgefield had to honor those prices even after Kahle learned that the foreclosure judgment had divested the prior owners, otherwise it would be scuttling its chances of acquiring those mineral deeds at all.

104. But in Sections 3, 13, and 95, Ridgefield's offers represented only a fraction of the Section 14 valuation—just $4,000 to $5,000 per net mineral acre—despite the fact that minerals in Sections 3, 13, and 95 are just as if not more valuable than minerals in Section 14.

105. Throughout 2020 and into early 2021, Ridgefield closed with several of these parties and obtained mineral deeds from them. Again, the process was generally the same as with Section 14. Once the terms were agreed upon, Kahle prepared a written agreement memorializing the deal and a mineral deed from the grantor to Ridgefield, which Tomahawk forwarded to the grantor. After signing the agreement and deed, the grantor emailed scanned copies to Tomahawk. Tomahawk in turn emailed them to Kahle. Once Kahle approved title and Kerrigan approved financing, Ridgefield then mailed the check for the agreed purchase price to Tomahawk for delivery to the grantor. In one case, Ridgefield paid the purchase price by international wire transfer. Yerkovich authorized several of these payments and typically emailed copies of the processed checks to Tomahawk. The grantor typically then mailed the originals of the executed agreement and mineral deed to Tomahawk, although some mailed them directly to Ridgefield. On Kahle's instructions, Tomahawk mailed the original mineral deeds to the respective county clerks' offices for recording.

106. All told, Ridgefield acquired and recorded 20 invalid mineral deeds in Sections 3, 13, 14, and 95 from the following grantors in the Tax Foreclosure Project:

| Grantor | Residence | Section | County |
|---------|-----------|---------|--------|
| Gary Reed, as Trustee | California | 14 | Loving |
| The O'Neils, as Co-Trustees | Oklahoma | 14 | Loving |
| Samuel Brenner | Oklahoma | 14 | Loving |
| Ronald Abbott, Jr. | Colorado | 14 | Loving |

| | | | |
|---|---|---|---|
| Judith Abbott | Colorado | 14 | Loving |
| Susan Kathleen Hirtz, et al. | Florida, New Mexico | 95 | Ward |
| Isaac G. Martinez, III | Arizona | 95 | Ward |
| Russell Smith | New Jersey | 95 | Ward |
| H. Curtis Perry | Australia | 13 | Loving |
| Jean Murray | Vermont | 13 | Loving |
| Ruth Ellen Holdcroft | Georgia | 13 | Loving |
| Robert Pike | Michigan | 13 | Loving |
| Alan Pike | Michigan | 13 | Loving |
| Kenneth Pike | Michigan | 13 | Loving |
| Anne Murray Middaugh | Illinois | 13 | Loving |
| David Pike | Michigan | 13 | Loving |
| Joyce Murray Walker | Wisconsin | 13 | Loving |
| Jim Hall | Texas | 3 | Loving |
| Jerry Larson | Texas | 3 | Loving |
| Albert Benjamin Ramsey | Texas | 3 | Loving |

107.   Some of these grantors elected to sign mineral deeds covering all of their interest, while others elected to sign mineral deeds covering a portion of their interest and go along with Ridgefield's sham litigation against DOH. Those that purported to convey partial interests and agreed to participate in Ridgefield's sham litigation include Section 13 claimants Robert Pike and David Pike, and Section 3 claimants and Jim Hall, Jerry Larson, and Albert Benjamin Ramsey. Upon information and belief, Ridgefield's outside counsel mailed or emailed these parties engagement agreements containing substantially the same terms as those of the Section 14 litigants, which the recipients executed and returned by mail or email.

108.   Jerry Larson died after the Section 3 suit was filed. On July 15, 2021, his widow Donna Larson filed a suggestion of death and was substituted as a plaintiff. Upon information and belief, Ridgefield's outside counsel also mailed or emailed Donna Larson an engagement agreement containing substantially the same terms as those with the other Section 3 litigants, which she executed and returned by mail or email. Donna Larson engaged Ridgefield's counsel and has participated in the sham litigation against DOH with actual knowledge of the fraudulent and extortionate scheme.

## H. Defendants knew that Ridgefield's mineral deeds were invalid.

109.   All participants in the scheme knew that Ridgefield's mineral deeds were invalid. The grantors, Ridgefield, and Ridgefield's employees and agents are all imputed with constructive knowledge that the prior owners' mineral interests were foreclosed upon and conveyed to DOH under the tax judgments, sheriff's deeds, and special warranty deed, creating an irrebuttable presumption of actual knowledge.[2] Moreover, each Defendant and several if not all of the grantors who executed mineral deeds to Ridgefield subjectively knew and believed that the tax foreclosures had divested the grantors or their ancestors and that the mineral deeds into Ridgefield were therefore invalid.

110.   Despite Ridgefield's withholding of many relevant documents and communications under frivolous claims of attorney-client and work product privileges, the limited discovery that Ridgefield provided in state court litigation shows that the participants in the scheme repeatedly acknowledged that the tax foreclosures had divested the grantors or their ancestors of their mineral interests in the tracts at issue.

111.   Ridgefield's internal communications show that its employees and agents subjectively knew and believed that the foreclosures covered the mineral interests at issue. On September 26, 2019, Kahle sent an email to Steve Kerrigan, Stephen Yerkovich, and other Ridgefield personnel concerning the interest formerly owned by Lula Eades, one of the foreclosed owners in Section 3 of Loving County. Unlike some of the other foreclosed owners, Eades did not own a possessory mineral interest but a non-participating royalty interest ("NPRI"). In the email, Kahle acknowledged that Eades's NPRI was foreclosed upon and sold to DOH, and Kahle wanted to target it in the Tax Foreclosure Project because a particularly good oil well was producing in Section 3:

> Attached are the offer letters for the successors of Lula Eades for an interest in Section 3, Block C-27 in Loving. The original NPRI, sold to

---

[2] Tex. Prop. Code § 13.002; *see HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 887 (Tex. 1998).

DOH Oil in the Loving County Tax Foreclosure, is 2.5 NMA but could be interpreted as 5 NMA. I initially didn't pay much attention to the interest due to the small size and the fact that the operator is Headington Energy. Then, however, I saw that the Judge 3 well has produced $186,000 b/o in three full months.

112. On September 5, 2019, Kahle emailed spreadsheets to Steve Kerrigan, Stephen Yerkovich, and other Ridgefield employees showing "all interests included in the mass tax foreclosures in Reeves and Ward Counties that occurred in the late 1990's." The first column in the Ward County spreadsheet is titled "Foreclosed Owner." It identifies Hennessy & Spry Partnership, Harold W. & Willa L. Ormsby, and J. F. Bianconi as "Foreclosed Owners" in Section 95. The next column is titled "Current Owner," and it identifies DOH Oil Company as the current owner of the interests.

113. In an internal email dated October 5, 2020, Stephen Yerkovich told Aaron Kahle, Steven Kerrigan, and other employees that he had approved the funding request for the "tax foreclosure interest" of one of the Section 95 mineral deed grantors.

114. Ridgefield's employees and agents were not the only participants in the scheme with subjective knowledge that the foreclosures and sheriff's deeds had divested the prior owners of their mineral interests. Many if not all of the mineral deed grantors knew as well. As alleged above, several of the offer letters and agreements between Ridgefield and the mineral grantors acknowledge that the tax foreclosures patently covered the mineral interests and that DOH "purportedly acquired" those interests under its sheriff's deeds. This includes Ridgefield's:

- Section 14 offer letter to the O'Neil Trust dated July 29, 2019;

- Section 14 agreement with Samuel Brenner dated October 2, 2019;

- Section 13 agreement with David Pike dated November 11, 2019; and

- Section 13 agreement with Robert Pike dated November 13, 2019.

115. And even when other offer letters or agreements between Ridgefield and the grantors did not explicitly mention the tax foreclosures or sheriff's deeds, Tomahawk

informed several if not all of the grantors of the tax foreclosures when it was negotiating the deals with them.

116.   Further, one of Ridgefield's grantors in Section 14 confirmed his lack of ownership directly to DOH nine years before Kahle and Kerrigan solicited him to participate in the scheme. On April 25, 2010, Ronald Abbott, Jr., the son of R. E. Abbott, sent DOH's counsel a letter stating: "I agree that DOH Oil Company purchased the interest of R. E. Abbott at tax sale."

117.   When Ronald Abbott, Jr. and his sister Judith Abbott were solicited by Ridgefield in 2019, they elected to sign mineral deeds covering all of their interest in exchange for $160,000 rather than assign a portion of their interest for less money and then participate in the sham litigation against DOH.

118.   In Aaron Kahle's state court deposition, he testified that when Ridgefield approached the Abbotts, "they had known about the [Section 14] interest, but they had no idea that the interest was foreclosed. They thought they still owned it." Kahle was unaware that DOH had the 2010 letter from Abbott when he gave this testimony.

119.   Defendant Barbara Sue O'Neil, who executed the O'Neil Trust's partial conveyance to Ridgefield and agreed to participate in the Section 14 litigation against DOH, is the sister of Ronald Abbott, Jr.

120.   In addition to knowing and believing that the tax foreclosures divested the prior owners of all of their mineral interest, Defendants also knew that, even if the foreclosed owners had once had a meritorious basis to challenge the validity of the tax foreclosures—which they did not—DOH and Johnson's good and clear title had long been conferred upon them by statute. Section 33.54 of the Texas Tax Code provides that unless the foreclosed owner challenges the validity of a tax sale within one year of the recording of the sheriff's deed, or otherwise extends that time by paying the taxes,[3] the

---

[3] The ability to extend the one-year period by paying taxes, however, only applies to a person not served in the tax suit. Tex. Tax Code § 33.54(b).

challenge is forever barred and "the purchaser at the tax sale or the purchaser's successor in interest has full title to the property, precluding all other claims."[4] The sheriff's deeds and special warranty deed under which DOH acquired the interests were recorded in 1995, 1998, and 2001, and none of the foreclosed owners challenged their validity within the one-year limitations period or otherwise tolled it by paying taxes—all taxes were paid by DOH and Johnson.

121.   Not only are Defendants charged with knowledge of these statutory provisions, once again, they had personal, subjective knowledge of them and their absolute preclusion of Ridgefield's ability to acquire valid title under its mineral deeds. In deposition, Kahle summarized the basis of Ridgefield's frivolous challenge to DOH's title to the Loving County interests by stating foreclosing on the delinquent taxpayers' entire mineral interests was "overreaching by the Court." But he acknowledged that the tax judgment plainly states that it is foreclosing on the owners' entire mineral interests and that if valid, it did just that.

122.   Kahle further admitted that at the time he and Kerrigan green-lit the Tax Foreclosure Project in mid-2019, he was personally aware of section 33.54 of the Tax Code. Again, that provision states that any challenge to the validity of a tax sale must be brought within one year of the recording of the sheriff's deed, and if it is not, the purchaser "has full title to the property, precluding all other claims."[5] Kahle's personal knowledge is imputed to Ridgefield and its employees.

123.   Knowing that Ridgefield's mineral deeds could not possibly be valid, Defendants proceeded to file them in the public records. Ridgefield then commenced its extortionate, serial litigation against DOH and Johnson.

---

[4] Tex. Tax Code §§ 33.54(a)-(c); 34.08(b) ("The purchaser may conclusively presume that the tax sale was valid and shall have full title to the property free and clear of the right, title, and interest of any person that arose before the tax sale….").

[5] Tex. Tax Code § 33.54(a)-(c).

I. **Ridgefield commenced its abusive, serial litigation to exert economic pressure on DOH and Johnson.**

124.   The first lawsuit concerned the Section 14 interests. It was filed by Ridgefield, the O'Neil Trust, and Samuel Brenner against DOH and its managing partner David Hill in Loving County district court on January 23, 2020. In connection with that suit, Ridgefield recorded a lis pendens notice in the Loving County Official Public Records on April 2, 2020. Stephen Yerkovich emailed a copy of the notice of lis pendens to EOG Resources, the operator of the Section 14 wells, on April 17, 2020. C. Megan Brenner was substituted for Samuel Brenner in December 2020.

125.   Ridgefield's second suit concerned the Section 95 interests. It was filed by Ridgefield against DOH, Hill, and Johnson in Ward County district court on July 30, 2020.

126.   Ridgefield followed up the Ward County suit with two more suits against DOH and Hill in Loving County—one covering Section 3 and one covering Section 13. Both were filed on August 24, 2020. The Section 3 suit included partial grantors Jim Hall, Jerry Larson, and Albert Benjamin Ramsey as Ridgefield's co-plaintiffs. Donna Larson was substituted for Jerry Larson in July 2021. The Section 13 suit included partial grantors Robert Pike and David Pike as Ridgefield's co-plaintiffs.

127.   In all four lawsuits, Ridgefield and its co-plaintiffs sought title to the interests owned by DOH, damages from both the operator and DOH, and an order disgorging DOH of all revenues it had received. The Ward County suit sought the same remedies against Johnson as DOH's partial assignee.

128.   Because of the lawsuits, the operators of DOH and Johnson's interests suspended their revenues attributable to the subject minerals.

129.   The three Loving County lawsuits have now been abated indefinitely.

130.   Ridgefield controls the litigation strategy of its co-plaintiffs in the lawsuits. A number of its agreements with the grantors who elected to participate in Ridgefield's

sham litigation state that Ridgefield will "represent [the grantor] on any claims against DOH." Moreover, in their engagement letter with Joyce + McFarland in the first lawsuit, Brenner and the O'Neils agreed that "if any actual conflict of interest arises, this firm will withdraw from the representation of all of the Clients save and except Ridgefield Permian Minerals, LLC; you agree to waive any conflict of interest presented by the firm's continuing to represent Ridgefield Permian Minerals, LLC."

131.　All of Ridgefield's internal decisions regarding the litigation, including whether to file and settle the lawsuits, are made jointly between Kahle and Kerrigan.

132.　At no time in the state court litigation has Ridgefield articulated a legitimate basis for claiming that it acquired title to the mineral interests at issue under its mineral deeds. And as explained above, its bogus title claims directly contravene Ridgefield's actual knowledge and belief that the tax foreclosures divested the prior owners and that DOH and Johnson held good and clear title under the sheriff's deeds and special warranty deed.

133.　As further detailed above, even if Ridgefield had articulated a legitimate basis for claiming that the tax foreclosures, sheriff's deeds, and special warranty deed into DOH were invalid—which it has not—the Texas Tax Code conferred good title upon DOH and Johnson more than two decades ago when the prior owners failed to timely challenge the tax sale within the prescribed one-year period. [6] And once again, Kahle and Ridgefield personally knew about this statute and its absolute preclusion of Ridgefield's ability to acquire valid title under the mineral deeds.

134.　In addition to these statutes, Ridgefield and its co-plaintiffs' title claims are subject to binding adverse authority from the El Paso Court of Appeals. *W.L. Pickens Grandchildren's Joint Venture v. DOH Oil Co.*, 281 S.W.3d 116, 122-23 (Tex. App.—El Paso 2008, pet. denied). Remarkably, the *W.L. Pickens* case concerned the *same tax sale*

---

[6] Tex. Tax Code §§ 33.54; 34.08(b).

under which DOH acquired the Loving County interests at issue here. There, the Court confirmed that section 33.54 bars any challenge of the validity of the tax sale, regardless of its merits, if it is not brought within the statutorily prescribed time. *Id.* at 123 ("Without a timely challenge, DOH acquired good title to the property through the sheriff's deed.").

135.   Perhaps more remarkably, in a recent case where Ridgefield was itself a party, the El Paso Court of Appeals again confirmed that section 33.54 bars Ridgefield's bogus title claims against DOH and Johnson. *Ridgefield Permian, LLC v. Diamondback E & P LLC*, 626 S.W.3d 357, 368 (Tex. App.—El Paso 2021, pet. filed). There, the Court held that a lawsuit concerning the *interpretation* of the plain language of a Reeves County tax judgment and sheriff's deeds could proceed notwithstanding section 33.54, but it again recognized that any collateral attack on the *validity* of such instruments—like Ridgefield's sham lawsuits against DOH and Johnson—is barred if not brought within section 33.54's limitations period. *Id.* Here, Kahle and Ridgefield knew and acknowledged that plain language of the tax judgments and sheriff's deeds patently divested the owners of all of their mineral interests beneath the tracts and conveyed them to DOH. Ridgefield itself characterizes its frivolous claims as challenges to the validity of those instruments, not questions of their interpretation. Yet even in face of this binding adverse authority, Ridgefield and its co-plaintiffs have proceeded with their bad faith lawsuits.

136.   Further, Texas courts have expressly held that section 33.54 bars the claims of a predatory troll like Ridgefield, who is not a foreclosed owner but rather an assignee of a foreclosed owner trying to stand in its shoes, and who took its assignments with full knowledge of the tax sale and the fact that its predecessor failed to challenge the tax sale within the limitations period. *Am. Homeowner Pres. Fund, LP v. Pirkle*, 475 S.W.3d 507, 517-26 (Tex. App.—Fort Worth 2015, no pet.) (finding that allowing an assignee to assert its predecessor's challenges to a tax sale "risks establishing a dangerous precedent by providing an incentive to predators to peruse tax sale records for defects…without any protections to the property tax sale purchaser.").

137.    Not only are Ridgefield and its co-plaintiffs' claims frivolous on their face, but they were also not brought for the purpose of extending, modifying, or reversing any existing law.[7] At no point did Ridgefield claim that the purpose of its serial lawsuits was to challenge the validity of the Tax Code's statutory framework or seek a reversal of the controlling case law. Doing so would have forced Ridgefield and its co-plaintiffs to consent to the entry of judgments against them in the state district courts.

138.    But that would not serve the Defendants' true interests—tying up DOH and Johnson's property for as long as possible and prolonging their economic harm in the hopes of forcing them to give in and convey part of their property to Ridgefield and its co-plaintiffs. Instead, Ridgefield and its co-plaintiffs have proceeded with rank indifference to both the statutory and case law, refusing to acknowledge that their claims—despite wholly lacking merit—require the overturning of both.

139.    Further, Ridgefield, its co-plaintiffs, and its counsel have repeatedly employed bad-faith, abusive litigation tactics and made egregious misrepresentations of fact and law throughout the state court litigation. For example:

      a.    Ridgefield and its co-plaintiffs filed pleadings containing material misrepresentations of the contents of the filings in the tax foreclosures, including that that the Loving County tax foreclosure "did not address the reversionary interests [the defendants] held in the mineral estate in the Subject Tract, nor did it address the minerals in the ground that reverted to them after the cessation of production," despite the tax judgment's express language to the contrary.

---

[7] Tex. R. Civ. P. 13 ("'Groundless' for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law.")

b. Ridgefield and its co-plaintiffs filed pleadings falsely representing that the tax foreclosure suits concerned delinquent taxes on oil and gas production.[8]

c. Ridgefield and its co-plaintiffs failed to disclose binding Texas Supreme Court authority barring their attempts to collaterally attack the tax judgments;

d. Ridgefield and its co-plaintiffs sued DOH's managing partner David Hill individually and claimed that he was the alter-ego of DOH. Kahle later admitted under oath that Ridgefield had no factual basis to support its alter-ego claim.

e. Ridgefield failed to preserve or collect any documents in Tomahawk's possession, despite claiming that Tomahawk was Ridgefield's agent and its client representative under the Texas Rules of Evidence.

f. Aaron Kahle testified as Ridgefield's corporate representative that he had gathered and produced all documents responsive to DOH's discovery requests. He later contradicted this testimony in the same deposition, admitting that he had not even searched for many of the documents. Ridgefield agreed to voluntarily suspend Kahle's deposition and continue it after it had fully responded to the requests, avoiding sanctions for discovery abuse.

g. Ridgefield and its co-plaintiffs filed pleadings frivolously claiming that the Loving County tax judgment foreclosed on Lula B. Eades's royalty under a

---

[8] Unlike ad valorem taxes on real property, taxes on oil and gas production, or severance taxes, are taxes on personalty and are the responsibility of the producer or purchaser, not the owner of the mineral interests in place. Tex. Tax Code §§ 201.251, 202.251. The tax lien for production taxes only extends to the interests of the person liable for paying the taxes. Tex. Tax Code §§ 201.303, 202.302. The foreclosure suits involved delinquent ad valorem taxes on real property interests, not taxes on production as Ridgefield falsely represented, and the liens attached to the property owner's mineral interests in place. Tex. Tax Code § 32.01.

now-expired oil and gas lease in Section 3, while admitting that Eades never owned a royalty created under a lease in Section 3.

h.  Ridgefield and its co-plaintiffs filed pleadings falsely claiming that the Loving County tax suit did not affect the interest of R.E. Abbott or Ruth Reed's heirs or successors, but failed to disclose that all heirs, devisees, and any other person claiming an interest in R.E. Abbott or Ruth Reed's property were named as defendants in the tax foreclosure petition and judgment.

i.  Ridgefield took positions in certain lawsuits that, in addition to being wholly without merit, directly contradicted its positions in other lawsuits. For example, in its Section 14 suit, Ridgefield amended its petition to add a claim that the Loving County tax judgment was invalid because certain defendants were allegedly not properly served, without acknowledging that binding adverse authority squarely rejected that argument. But in its Section 3 suit, Ridgefield took the position that the same authority did not apply to that suit *because* it involved a "challenge to a tax sale based on lack of service, which is not at issue in this case."

j.  Ridgefield and its co-plaintiffs filed a pleading misrepresenting that Ridgefield's chain of title from the purported heirs of the foreclosed interest owners was undisputed.

k.  Ridgefield and its co-plaintiffs repeatedly filed late briefs and evidence on pending motions without asking for leave and misrepresented that the court that it could consider its untimely filings without finding good cause.

l.  Ridgefield and its co-plaintiffs obtained a continuance of a summary judgment hearing by claiming that they needed two third-party depositions, supported by a sworn affidavit from its counsel. After the

continuance was granted, Ridgefield's counsel admitted to DOH's counsel in an email that taking the two depositions seemed "pointless."

    m.  Ridgefield and its co-plaintiffs repeatedly served duplicative, harassing rounds of written discovery requests seeking identical information sought in their previous requests.

    n.  Ridgefield and its co-plaintiffs falsely represented that altered screenshots of webpages were authentic reports of a Texas agency.

140.  Ridgefield's systematic acquisition and filing of invalid mineral deeds from the foreclosed owners, followed up by its serial-filing of baseless, abusive lawsuits, are part of a continued pattern in the fraudulent and extortionate scheme to target DOH. The real objective of these activities is to force DOH to convey part of its property to Ridgefield under the threat of continued economic harm.

141.  Defendants know that Ridgefield and its co-plaintiffs have no title and that their lawsuits are meritless.

142.  They also know that, as long as Ridgefield's mineral deeds are not judicially declared to be invalid and the suits are pending, DOH and Johnson's interests will remain tied up and their revenues unpaid.

143.  Moreover, Ridgefield has demonstrated its willingness to continue the scheme until DOH gives in.

**J.**    **Ridgefield has continued to acquire more fraudulent deeds and file more sham litigation on other DOH property interests, but only after DOH refused to convey part of its Loving and Ward County interests to Ridgefield.**

144.  Within a month after filing the third and fourth lawsuits, Ridgefield and its co-plaintiffs began to demand what Kahle and Kerrigan really wanted when they devised their Tax Foreclosure Project scheme—a portion of DOH's mineral interests. On September 23, 2020, before DOH and David Hill had even appeared in Ridgefield's third and fourth lawsuits, Ridgefield's outside counsel sent them a written settlement demand

"to put all issues between Ridgefield et al and DOH to bed." The demand was also sent on behalf of Samuel Brenner and the O'Neil trust, Ridgefield's co-plaintiffs in the Section 14 lawsuit, and Albert Ramsey, Jim Hall, and Jerry Larson, Ridgefield's co-plaintiffs in the Section 3 lawsuit.[9] It demanded that DOH (1) stipulate that Ridgefield and its co-plaintiffs owned half of "the disputed interest" in each tract and (2) pay them half of the revenues it had received since Ridgefield took its mineral deeds. In exchange, Ridgefield and its co-plaintiffs would dismiss all four lawsuits and "Ridgefield and its related entities [would] further agree and covenant not to sue David Hill or DOH Oil Company to establish superior title to any other mineral interests acquired by David Hill and/or DOH Oil Company through any tax foreclosure sale." DOH and Hill did not accept.

145.   By the summer of 2021, more than two years had passed since Kahle and Kerrigan first began tying up Ridgefield's investors' funds in the fraudulent Tax Foreclosure Project, with nothing to show for it. The first of Ridgefield's sham lawsuits was approaching trial, and it was clear that DOH and Johnson were more interested in defeating Ridgefield's frivolous claims on the merits and recovering attorneys' fees and Rule 13 sanctions than in conveying any portion of their property to Ridgefield. So, Kahle and Kerrigan decided to ratchet up the pressure.

146.   Following a hearing in Loving County on September 8, 2021, Ridgefield's counsel approached DOH's counsel and informed him that Ridgefield had "found another tax foreclosure" in which DOH purchased the foreclosed interests, this time in Martin County. Ridgefield's counsel said that Ridgefield was working on acquiring mineral deeds from the foreclosed owners and intended to file suit, but it wanted to know if DOH was interested in "resolving their differences" on the same terms as its prior demand.

---

[9] At the time of this settlement demand, Robert Pike and David Pike had not yet executed their partial mineral deeds to Ridgefield. Once they did, they were added as plaintiffs to the Section 13 litigation.

147.   In other words, Ridgefield's previous "offer" to never sue DOH again in exchange for part of its Loving and Ward County interests was a threat, not an olive branch. If DOH refused to capitulate, Ridgefield would simply continue to acquire more invalid mineral deeds and file more sham litigation on other DOH property, tying it up for years and causing DOH to stop receiving those revenues too. The following day, Ridgefield's counsel forwarded more information about the Martin County tax suit, stated that Ridgefield had either acquired or reached agreements to acquire mineral deeds from the foreclosed owner's heirs, and again asked if DOH was interested in "a global settlement."

148.   On September 22, 2021, Ridgefield's counsel emailed DOH's counsel seeking to confirm that "settlement talks between our clients towards some sort of resolution have reached an end point." DOH's counsel replied that any settlement demand would be passed on, but it was not clear what was being proposed regarding the newly-raised Martin County issue.

149.   On November 11, 2021, Ridgefield's counsel sent a settlement demand letter covering the four existing lawsuits, plus the Martin County interests. It was sent on behalf of Ridgefield, its co-plaintiffs, as well as three additional parties in the threatened Martin County litigation—Victor Green, Laura Peters, and Dawn Gee. It provided that in exchange for DOH (1) stipulating that Ridgefield, its co-plaintiffs, and the would-be Martin County co-plaintiffs own half of the interest claimed by them in each tract and (2) paying them half of the revenues attributable to the interests they claim since first production, Ridgefield would dismiss all four lawsuits, and again "further agree and covenant not to sue David Hill or DOH Oil Company to establish superior title to any other mineral interests acquired by David Hill and/or DOH Oil Company through any tax foreclosure sale."

150.   On November 18, 2021, Ridgefield's counsel asked DOH's counsel if DOH was ready to discuss the settlement demand. On November 19, 2021, Ridgefield recorded

10 mineral deeds from the Section 37 grantors. On November 29, 2021, DOH's counsel informed Ridgefield's counsel that DOH had no response and did not see the need to discuss the demand.

151.   On December 1, 2021, Ridgefield filed its fifth lawsuit against DOH in Martin County district court. In it, Ridgefield and its co-plaintiffs Victor Green, Laura H. Peters, and Dawn E. Gee claimed title to the Section 37 interests that were foreclosed upon in 1994 and conveyed to DOH under its 1995 special warranty deed. They also seek damages from both the operator and DOH, and an order disgorging DOH of all revenues it has received.

152.   In the Martin County suit, Ridgefield claims title under 11 mineral deeds from the purported heirs of William and Louise Wilkie, the delinquent owners who were divested in the Martin County tax foreclosure. All of the Section 37 grantors reside outside of Texas.

| Grantor | Residence | Section | County |
|---|---|---|---|
| Laura Holmes Peters | California | 37 | Martin |
| John C. Dugan | California | 37 | Martin |
| Patrick A. Dugan | Colorado | 37 | Martin |
| Victor P. Green | South Carolina | 37 | Martin |
| Ruth Green Ward | South Carolina | 37 | Martin |
| Rachael Green McKinney | Kansas | 37 | Martin |
| William F. Enright | New Mexico | 37 | Martin |
| Clyde Edward Jackson | Florida | 37 | Martin |
| Bridget M. Knight | California | 37 | Martin |
| Dawn Enright Gee | California | 37 | Martin |
| Christopher D. Snyder | California | 37 | Martin |

153.   Ridgefield paid the Section 37 grantors purchase prices of as little as $3,000 per acre, despite Section 37 being some of the most valuable mineral acreage that it has targeted yet.

154.   Ridgefield also entered into agreements with the grantors who elected to convey partial interests and participate in the Ridgefield's sham litigation. Those

agreements acknowledge that the tax foreclosures patently covered the grantor's mineral interests and that DOH "purportedly acquired" those interests under its deeds.

155. Upon information and belief, Ridgefield acquired and recorded its Section 37 mineral deeds using substantially the same process as in the other sections, including using the mails or interstate wire to transmit solicitation letters, purchase agreements, payments, and the mineral deeds between Ridgefield and the grantors, as well as using the mails to send the mineral deeds to and from the Martin County clerk.

156. There is no reason to assume that Ridgefield, Kahle, and Kerrigan are finished. In fact, the pattern of their past conduct suggests that they will only continue targeting DOH by pursuing more fraudulent "tax foreclosure opportunities against DOH Oil" until DOH finally relents and conveys part of its property to Ridgefield.

### K. Defendants are trying to shroud the entire enterprise in secrecy under bogus privilege claims.

157. Defendants have used Kahle's role as attorney to provide a shroud of secrecy over the communications and activities of the associates of the enterprise. In the state court litigation, Ridgefield has refused to provide numerous relevant communications among Ridgefield personnel and with third parties—including the mineral deed grantors—claiming that these materials are subject to attorney-client and work product privileges. This includes:

- Ridgefield's internal communications regarding the tax foreclosures, subject minerals, and DOH;

- Communications between Ridgefield and Tomahawk concerning the acquisition of mineral deeds in the Tax Foreclosure Project;

- Communications by and among Ridgefield employees, Tomahawk, and the mineral deed grantors or their representatives; and

- Communications between Tomahawk and others regarding the acquisition of mineral interests in the Tax Foreclosure Project.

158.   In most cases, the withheld communications were never privileged at all. For example, Kahle's communications with Tomahawk or third parties such as the mineral deed grantors are not attorney-client privileged because Kahle was not their attorney and they are not client representatives of Ridgefield. Moreover, no communications regarding the acquisition of the mineral deeds constitute work product, even though Ridgefield anticipated filing litigation, because the acquisition of mineral deeds is the ordinary course of business for both Ridgefield and Tomahawk.

159.   But even if some of these materials were once privileged, the privilege has been waived. The crime-fraud exception applies to any claim of attorney-client or work product privilege. Indeed, many of the very communications that Defendants claim to be privileged constitute predicate criminal acts of wire and mail fraud in support of Plaintiffs' RICO claims.

160.   Moreover, Ridgefield waived privilege under the voluntary disclosure doctrine. In state court litigation, Ridgefield intentionally disclosed communications containing Aaron Kahle's original, mistaken legal opinion that the Loving County tax foreclosure judgment covered an expired royalty interest, or no real property interest at all. Ridgefield also allowed Kahle to testify at length about that legal opinion in deposition. Ridgefield no doubt voluntarily disclosed that opinion to show that it always believed that, as a matter of law, the tax judgment foreclosed upon nothing.

161.   But Ridgefield cannot selectively waive privilege to only the attorney-client communications and opinions that appear to support its frivolous claims. Its voluntary waiver extends to all attorney-client communications and opinions of counsel regarding the tax foreclosure suit and subject minerals.

## V. Causes of Action

**Common RICO Allegations against all Defendants**

162. Each Defendant is capable of holding a legal or beneficial interest in property and therefore is a "person" within the meaning of 18 U.S.C. 1961(3).

163. The RICO enterprise is an association-in-fact enterprise under 18 U.S.C. 1961(4). The enterprise comprises the following associates:

- Defendant Aaron Kahle;

- Defendant Steve Kerrigan;

- Defendant Stephen Yerkovich;

- Defendant Ridgefield Permian Minerals, LLC;

- Tomahawk Land Resources, LLC;

- All grantors that executed the invalid mineral deeds purporting to convey to Ridgefield all or a portion of their oil, gas, and mineral interests in Sections 3, 13, 14, 95, or 37, including the following named Defendants: Barbara Sue O'Neil and Richard K. O'Neil, Individually and as Co-Trustees of the O'Neil Trust; Robert Pike; David Pike; Jim Hall; Albert Benjamin Ramsey; Victor Green; Laura Peters; and Dawn Gee; and

- All co-plaintiffs of Ridgefield in the lawsuits filed against DOH and Johnson concerning the interests in Sections 3, 13, 14, 95, or 37, including the following named Defendants: Barbara Sue O'Neil and Richard K. O'Neil, as Co-Trustees of the O'Neil Trust; C. Megan Brenner; Robert Pike; David Pike; Jim Hall; Albert Benjamin Ramsey; Donna Larson; Victor Green; Laura Peters; and Dawn Gee.

164. The enterprise functions as a continuing unit with the common purpose of depriving DOH and Johnson of their property by fabricating the appearance of colorable title in Ridgefield under the fraudulent mineral deeds, clouding DOH and Johnson's record title and causing them substantial economic harm, and positioning Ridgefield to

bring sham lawsuits on behalf of itself and its co-plaintiff grantors to extort DOH and Johnson into conveying part of their property to Ridgefield and its state court co-plaintiffs. Each associate of the enterprise has acted to further this purpose.

165.   The enterprise has engaged in, and its activities have affected, interstate commerce within the meaning of 18 U.S.C. § 1962(b) and (c).

**Count 1 – Violation of 18 U.S.C § 1962(b) by the Count 1 Defendants**

166.   Count 1 is against Defendants Aaron Kahle; Steve Kerrigan; and Ridgefield Permian Minerals, LLC (the "Count 1 Defendants").

167.   Through a pattern of racketeering activity, the Count 1 Defendants have acquired and maintained, directly or indirectly, interest in and control of the enterprise, in violation of 18 U.S.C. § 1692(b).

168.   The predicate criminal acts constituting the Count 1 Defendants' pattern of racketeering activity in violation of 18 U.S.C. § 1692(b) include their repeated acts of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, including those detailed below.

169.   In violation of 18 U.S.C. § 1341, Ridgefield deposited or caused to be deposited with the U.S. Postal Service or a private or commercial interstate carrier, took and received from them, and knowingly caused them to deliver, multiple mailings for the purpose of executing or attempting to execute the enterprise's fraudulent and extortionate scheme to deprive DOH and Johnson of their property in Sections 3, 13, 14, 95, and 37.

170.   The scheme to defraud was using the mineral deeds that the Count 1 Defendants actually or constructively knew conveyed Ridgefield no interest to create bogus claims of colorable title. The Count 1 Defendants then presented the invalid mineral deeds to the public, the courts, the oil and gas operators, and other persons, intending to deprive DOH and Johnson of their property by false, dishonest, and overreaching means.

171. Ridgefield's mailings in violation of 18 U.S.C. § 1341 include:

   a. solicitation letters offering to purchase property interests that Ridgefield knew the recipients did not own, mailed by or on behalf of Ridgefield to the mineral deed grantors;

   b. drafts of agreements for Ridgefield's purchase of property interests that it knew the grantors did not own, mailed by or on behalf of Ridgefield to the mineral deed grantors;

   c. executed originals of agreements for Ridgefield's purchase of property interests that it knew the grantors did not own, mailed by the mineral deed grantors to Tomahawk or Ridgefield;

   d. drafts of mineral deeds into Ridgefield that Ridgefield knew to be invalid, mailed by or on behalf of Ridgefield to the mineral deed grantors;

   e. executed originals of mineral deeds into Ridgefield that Ridgefield knew to be invalid, mailed by the mineral deed grantors to Tomahawk or Ridgefield;

   f. executed original mineral deeds into Ridgefield that Ridgefield knew to be invalid, mailed by or on behalf of Ridgefield to the county clerks of Loving, Ward, and Martin Counties for recording;

   g. file-stamped originals of recorded mineral deeds into Ridgefield that Ridgefield knew to be invalid, mailed by the county clerks to Tomahawk or Ridgefield;

   h. a lis pendens notice in connection with the Section 14 lawsuit that Ridgefield knew to be invalid, mailed by or on behalf of Ridgefield to the Loving County clerk for recording;

   i. the file-stamped original of the recorded lis pendens notice in connection with the Section 14 lawsuit that Ridgefield knew to be invalid, mailed by Loving County clerk to Ridgefield's outside counsel;

j.  checks for the purchase of mineral interests that Ridgefield knew the payees did not own, mailed by or on behalf of Ridgefield to the mineral deed grantors;

k.  partially-executed engagement agreements between Ridgefield, its state court co-plaintiffs, and the Joyce + McFarland law firm for the firm's joint representation of them in the abusive, extortionate state court litigation against DOH and Johnson, mailed by the Joyce + McFarland law firm to Ridgefield's state court co-plaintiffs; and

l.  fully-executed engagement agreements between Ridgefield, its state court co-plaintiffs, and the Joyce + McFarland law firm for the firm's representation of them in the abusive, extortionate state court litigation against DOH and Johnson, mailed by Ridgefield's state court co-plaintiffs to the Joyce + McFarland law firm.

172.  To the extent that Ridgefield personnel or agents did not personally deposit, take or receive, or cause the delivery of these mailings, Ridgefield nonetheless caused such use of the mails in violation of 18 U.S.C § 1341, because it knew or could reasonably foresee that these mailings were necessary to execute the fraudulent and extortionate scheme to deprive DOH and Johnson of their property and for Ridgefield to acquire and maintain its interest in and control of the enterprise.

173.  In violation of 18 U.S.C. § 1343, Ridgefield transmitted or caused to be transmitted by means of wire in interstate or foreign commerce, multiple writings, signals, and sounds for the purpose of executing or attempting to execute the enterprise's fraudulent and extortionate scheme to deprive DOH and Johnson of their property in Sections 3, 13, 14, 95, and 37.

174.  The scheme to defraud was using the mineral deeds that the Count 1 Defendants actually or constructively knew conveyed Ridgefield no interest to create bogus claims of colorable title. The Count 1 Defendants then presented the invalid

mineral deeds to the public, the courts, the oil and gas operators, and other persons, intending to deprive DOH and Johnson of their property by false, dishonest, and overreaching means.

175. Ridgefield's wire transmissions in violation of 18 U.S.C. § 1343 include:

    a.   telephone calls between Ridgefield or Tomahawk and the out-of-state mineral grantors concerning Ridgefield's acquisition of mineral deeds that it knew to be invalid;[10]

    b.   email communications concerning Ridgefield's acquisition of mineral deeds that it knew to be invalid, including emails attaching draft purchase agreements and mineral deeds, sent by Ridgefield or Tomahawk to the out-of-state mineral deed grantors;

    c.   emails attaching scanned copies of executed agreements for Ridgefield's purchase of interests that Ridgefield knew the grantors did not own, sent by the out-of-state mineral deed grantors to Tomahawk or Ridgefield;

    d.   emails attaching scanned copies of executed mineral deeds that Ridgefield knew to be invalid, sent by the out-of-state mineral deed grantors to Tomahawk or Ridgefield;

    e.   a wire transfer for the purchase of mineral interests that Ridgefield knew the payee did not own, sent by or on behalf of Ridgefield to Section 13 mineral deed grantor Harold Curtis Perry in Australia;

    f.   telephone calls between Ridgefield, Tomahawk, or Ridgefield's counsel and the out-of-state mineral grantors concerning Ridgefield and its counsel's representation of the out-of-state mineral grantors in the sham litigation against DOH and Johnson;

---

[10] The out-of-state mineral deed grantors are identified in the tables at 106 and 152.

g.  emails attaching partially-executed engagement agreements between Ridgefield, its state court co-plaintiffs, and the Joyce + McFarland law firm for the firm's joint representation of them in the abusive, extortionate state court litigation against DOH and Johnson, sent by the Joyce + McFarland law firm to Ridgefield's out-of-state co-plaintiffs;[11] and

h.  emails attaching fully-executed engagement agreements between Ridgefield, its state court co-plaintiffs, and the Joyce + McFarland law firm for the firm's representation of them in the abusive, extortionate state court litigation against DOH and Johnson, sent by Ridgefield's out-of-state co-plaintiffs to the Joyce + McFarland law firm.

176.  To the extent that Ridgefield personnel or agents did not personally transmit such writings, signals, or sounds, Ridgefield nonetheless caused such transmissions in violation of 18 U.S.C § 1343, because it knew or could reasonably foresee that these transmissions were necessary to execute the fraudulent and extortionate scheme to deprive DOH and Johnson of their property and for Ridgefield to acquire and maintain its interest in and control of the enterprise.

177.  Kahle and Kerrigan are each liable for all of the racketeering activities of Ridgefield because they knowingly committed, caused, or approved the above-described racketeering activities for the benefit Ridgefield and the enterprise. Ridgefield, as a separate entity, consented to, took part in, and benefited from the fraudulent conduct and racketeering activities of all individuals acting on its behalf and on behalf of the enterprise, including Kahle and Kerrigan. Further, to the extent that any of the Count 1 Defendants did not personally commit any of the above predicate acts of racketeering, each nonetheless caused such acts, because each knew or could reasonably foresee that they

---

[11] The out-of-state co-plaintiffs are: Barbara Sue O'Neil and Richard K. O'Neil, as Co-Trustees of the O'Neil Trust; Samuel Brenner; C. Megan Brenner; Robert Pike; David Pike; Laura Holmes Peters; Victor P. Green; and Dawn Enright Gee.

were necessary to execute the fraudulent and extortionate scheme to deprive DOH and Johnson of their property and for the Count 1 Defendants to acquire and maintain their interest in and control of the enterprise.

178. Additionally, Kahle personally and knowingly committed the following predicate criminal acts of mail fraud and wire fraud:

    a. mailed or authorized and instructed others to mail Ridgefield's solicitation letters, purchase agreements, and invalid minerals deeds to the mineral deed grantors;

    b. mailed or authorized and instructed others to mail executed originals of the invalid minerals deeds to the county clerks of Loving, Ward, and Martin Counties; and

    c. emailed or authorized and instructed others to email out-of-state mineral deed grantors or their representatives concerning Ridgefield's acquisition of mineral deeds that the Count 1 Defendants knew to be invalid, including emails attaching draft purchase agreements and mineral deeds.

179. Kerrigan personally and knowingly committed the following predicate criminal acts of mail fraud and wire fraud:

    a. mailed or authorized and instructed others to mail checks to the mineral deed grantors for the purchase of mineral interests that the Count 1 Defendants knew the payees did not own; and

    b. transmitted or authorized and instructed others to transmit an interstate wire transfer for the purchase of Harold Curtis Perry's mineral interests in Section 13, which the Count 1 Defendants knew he did not own.

180. The Count 1 Defendants acted with fraudulent intent because each knew that Ridgefield could not acquire title to the mineral interests under the invalid mineral deeds. Their purpose was to further the fraudulent and extortionate scheme to force DOH and Johnson to convey part of their property to Ridgefield.

181. Each of the Count 1 Defendants' predicate criminal acts of wire fraud and mail fraud constitutes "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). Each of the Count 1 Defendants committed two or more of these acts of racketeering activity within the last ten years, therefore, each has engaged in a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

182. Each Count 1 Defendant's pattern of racketeering activity has allowed each of them to acquire and maintain their interest in, as well as control of, the enterprise in violation of 18 U.S.C. § 1962(b). In addition to fabricating the appearance of a colorable title claim against DOH and Johnson, Ridgefield's deals for the mineral deeds positioned Ridgefield as the financier and Kahle, Kerrigan, and Ridgefield as the direct or indirect controllers of the enterprise's fraudulent and extortionate activities, including the abusive litigation against DOH and Johnson.

183. Plaintiffs DOH and Craig A. Johnson have been injured as a result of the Count 1 Defendants' violation of 18 U.S.C. § 1962(b). Plaintiffs' injuries include, without limitation, the continuing title clouds on Plaintiffs' mineral interests, loss of income after the operators of Plaintiffs' interests suspended their revenues without interest, and the legal fees that Plaintiffs have been forced to expend in the state court litigation, all of which were intended consequences of Ridgefield's racketeering activities.

184. Under 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold the amount of their damages, costs of suit, and reasonable attorneys' fees.

**Count 2 – Violation of 18 U.S.C § 1962(c) by the Count 2 Defendants**

185. Count 2 is against Defendants Aaron Kahle; Steve Kerrigan; Stephen Yerkovich; and Ridgefield Permian Minerals, LLC (the "Count 2 Defendants").

186. The Count 2 Defendants have conducted or participated in, directly or indirectly, the conduct of the enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1692(c).

187. The Count 2 Defendants' predicate criminal acts constituting a pattern of racketeering activity in violation of 18 U.S.C. § 1692(c) include acts of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 and acts of attempted extortion in violation of 18 U.S.C. § 1951.

188. Ridgefield's predicate criminal acts of mail and wire fraud constituting a pattern of racketeering in violation of 18 U.S.C. § 1962(c) include those set out in paragraphs 169 through 176.

189. In addition to being independent acts of racketeering activity as defined in 18 U.S.C. § 1961(1), Ridgefield's acts of mail and wire fraud also violated 18 U.S.C. § 1951, because Ridgefield committed them to induce or attempt to induce DOH and Johnson to part with their property, knowingly and willfully by means of extortion, and its extortionate acts delayed, interrupted, or adversely affected interstate commerce.

190. Ridgefield committed additional acts of attempted extortion in violation of 18 U.S.C. § 1951. These include:

    a. its demands that DOH and Johnson stipulate that Ridgefield owns part of their property in exchange for dismissing its sham lawsuits;

    b. its threats to continue acquiring more invalid mineral deeds and filing more sham litigation on other DOH property if DOH did not capitulate—threats that Ridgefield made good on with its Martin County mineral deeds and litigation; and

    c. its sending of the invalid mineral deeds and lis pendens notice to EOG Resources in an attempt to induce economic injury to DOH by causing its revenue payments to be suspended.

191. Ridgefield's acts of attempted extortion also include the filing of its sham lawsuits and its abusive, bad-faith litigation activities throughout those lawsuits, as set forth in paragraphs 124 through 156. Its abusive litigation activities, independently and in

conjunction with the broader RICO scheme, constitute predicate criminal acts of racketeering activity.

192.   Ridgefield committed all of these acts with the knowledge and subjective belief that it had no valid claim to the property at issue.

193.   All of the above-described predicate criminal acts were committed to obtain DOH and Johnson's property, with their consent, induced by the wrongful use of actual and threatened economic injury. Specifically, Ridgefield threatened to, and did, wrongfully cloud Plaintiffs' title, force them to defend frivolous lawsuits, and cause the operators to suspend their revenues without interest. Therefore, the acts fall within the definition of "extortion" under 18 U.S.C. § 1951(b)(2).

194.   Ridgefield's acts of attempted extortion in violation of 18 U.S.C. § 1951 include the use of mailings and interstate wire transmissions. They also caused the suspension of Plaintiffs' revenue payments sent by mail or interstate wire. Ridgefield's extortionate acts further interfered with Plaintiffs' contractual and business relationships with out-of-state oil and gas operators that conduct business in Texas, including Pioneer Natural Resources USA, Inc., a Delaware corporation; Continental Resources, Inc., an Oklahoma corporation with its principal office in Oklahoma; EOG Resources, Inc., a Delaware corporation; and COG Operating, LLC, a Delaware limited liability company. Accordingly, Ridgefield's acts of attempted extortion interfered with interstate commerce as required by 18 U.S.C. § 1951.

195.   Kahle, Kerrigan, and Yerkovich are each liable for all of the racketeering activities of Ridgefield because they knowingly committed, caused, or approved the above-described racketeering activities for the benefit Ridgefield and the enterprise. Ridgefield, as a separate entity, consented to, took part in, and benefited from the fraudulent conduct and racketeering activities of all individuals acting on its behalf and on behalf of the enterprise, including Kahle, Kerrigan, and Yerkovich. Further, to the extent that any of the Count 2 Defendants did not personally commit any of the above predicate acts of

racketeering, each nonetheless caused such acts, because each knew or could reasonably foresee that they were necessary to execute the fraudulent and extortionate scheme to deprive DOH and Johnson of their property.

196. Additionally, Kahle personally and knowingly committed the following predicate criminal acts of mail fraud, wire fraud, and extortion:

   a. concocted the scheme to defraud and extort DOH and Johnson;

   b. mailed or authorized and instructed others to mail Ridgefield's solicitation letters, purchase agreements, and invalid minerals deeds to the mineral deed grantors;

   c. mailed or authorized and instructed others to mail executed originals of the invalid minerals deeds to the county clerks of Loving, Ward, and Martin Counties;

   d. emailed or authorized and instructed others to email out-of-state mineral deed grantors or their representatives concerning Ridgefield's acquisition of mineral deeds that the Count 2 Defendants knew to be invalid, including emails attaching draft purchase agreements and mineral deeds;

   e. authorized and instructed Ridgefield's counsel to file the sham lawsuits in Loving, Ward, and Martin Counties;

   f. authorized and instructed Ridgefield's counsel to file the invalid lis pendens in Loving County; and

   g. authorized and instructed Ridgefield's counsel to send the extortionate and threatening demands for a portion DOH and Johnson's real property interests in exchange for dismissing the sham lawsuits and never suing DOH and Johnson again.

197. Kerrigan personally and knowingly committed the following predicate criminal acts of mail fraud, wire fraud, and extortion:

a. mailed or authorized and instructed others to mail checks to the mineral deed grantors for the purchase of mineral interests that the Count 2 Defendants knew the payees did not own;

b. transmitted or authorized and instructed others to transmit an interstate wire transfer for the purchase of Harold Curtis Perry's mineral interests in Section 13, which the Count 2 Defendants knew he did not own;

c. authorized and instructed Ridgefield's counsel to file the sham lawsuits in Loving, Ward, and Martin Counties; and

d. authorized and instructed Ridgefield's counsel to send the extortionate and threatening demands for a portion DOH and Johnson's real property interests in exchange for dismissing the sham lawsuits and never suing DOH and Johnson again.

198. Yerkovich personally and knowingly committed the following predicate criminal acts of mail fraud, wire fraud, and extortion:

a. mailed or authorized and instructed others to mail checks to the mineral deed grantors for the purchase of mineral interests that the Count 2 Defendants knew the payees did not own;

b. transmitted or authorized and instructed others to transmit an interstate wire transfer for the purchase of Harold Curtis Perry's mineral interests in Section 13, which the Count 2 Defendants knew he did not own; and

c. emailed Section 14 operator EOG Resources copies of Ridgefield's invalid mineral deeds and the lis pendens notice in an attempt to induce economic injury to DOH by causing its revenue payments to be suspended.

199. The Count 2 Defendants acted with fraudulent intent because each knew that Ridgefield could not acquire title to the mineral interests under its invalid mineral deeds. Their purpose was to further the fraudulent and extortionate scheme to force DOH and Johnson to convey part of their property to Ridgefield.

200.  Each of the Count 2 Defendants' predicate criminal acts of wire fraud, mail fraud, and attempted extortion constitutes "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). Each of the Count 2 Defendants committed two or more of these acts of racketeering activity within the last ten years, therefore, each has engaged in a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

201.  Plaintiffs DOH and Craig A. Johnson have been injured as a result of the Count 2 Defendants' violations of 18 U.S.C. § 1962(c). Plaintiffs' injuries include, without limitation, the continuing title clouds on Plaintiffs' mineral interests, loss of income after the operators of Plaintiffs' interests suspended their revenues without interest, and the legal fees that Plaintiffs have been forced to expend in the state court litigation, all of which were intended consequences of the Count 2 Defendants' racketeering activities.

202.  Under 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold the amount of their damages, costs of suit, and reasonable attorneys' fees.

## Count 3 – Violation of 18 U.S.C. § 1962(c) by the Count 3 Defendants

203.  Count 3 is against Defendants Barbara Sue O'Neil, individually and as Co-Trustee of the O'Neil Trust; Richard K. O'Neil, individually and as Co-Trustee of the O'Neil Trust; C. Megan Brenner; Robert Pike; David Pike; Jim Hall; Donna Larson; Albert Benjamin Ramsey; Victor Green; Laura Holmes Peters; and Dawn Enright Gee (the "Count 3 Defendants").

204.  The Count 3 Defendants have each conducted or participated in, directly or indirectly, the conduct of the enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1692(c).

205.  Each of the Count 3 Defendants' predicate criminal acts constituting a pattern of racketeering activity include acts of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 and acts of attempted extortion in violation of 18 U.S.C. § 1951.

206. In violation of 18 U.S.C. § 1341, the Count 3 Defendants deposited or caused to be deposited with the U.S. Postal Service or a private or commercial interstate carrier, took and received from them, and knowingly caused them to deliver, multiple mailings for the purpose of executing or attempting to execute the enterprise's fraudulent and extortionate scheme to deprive Plaintiffs of their property.

207. The scheme to defraud was using the mineral deeds that the Count 3 Defendants actually or constructively knew conveyed Ridgefield no interest to create bogus claims of colorable title. The Count 3 Defendants then presented the invalid mineral deeds to the public, the courts, the oil and gas operators, and other persons, intending to deprive DOH and Johnson of their property by false, dishonest, and overreaching means.

208. The mailings in violation of 18 U.S.C. § 1341 include:[12]

a. drafts of agreements for Ridgefield's purchase of property interests that the Count 3 Defendants knew they did not own, mailed by Ridgefield or its agents to the Count 3 Defendants;

b. executed originals of agreements for Ridgefield's purchase of property interests that the Count 3 Defendants knew they did not own, mailed by the Count 3 Defendants to Tomahawk or Ridgefield;

c. drafts of mineral deeds into Ridgefield that the Count 3 Defendants knew to be invalid, mailed by Ridgefield or its agents to the Count 3 Defendants;

d. executed originals of mineral deeds into Ridgefield that the Count 3 Defendants knew to be invalid, mailed by the Count 3 Defendants to Tomahawk or Ridgefield;

---

[12] The acts of mail fraud identified in subsections (a) through (g) apply to all Count 3 Defendants except C. Megan Brenner and Donna Larson. The acts of mail fraud identified in subsections (j) and (k) apply to all Count 3 Defendants.

e. executed original mineral deeds into Ridgefield that the Count 3 Defendants knew to be invalid, mailed by Ridgefield or its agents to the county clerks of Loving, Ward, and Martin Counties for recording;

f. file-stamped originals of recorded mineral deeds into Ridgefield that the Count 3 Defendants knew to be invalid, mailed by the county clerks to Tomahawk or Ridgefield;

g. checks from Ridgefield for the purchase of mineral interests that the Count 3 Defendants knew they did not own, mailed by Ridgefield or its agents to the Count 3 Defendants;

h. the lis pendens notice in connection with the Section 14 lawsuit, which Defendants Barbara Sue O'Neil and Richard K. O'Neil, individually and as Co-Trustees of O'Neil Trust, knew to be invalid, mailed by or on behalf of the O'Neil Trust to the Loving County clerk for recording;

i. the file-stamped original of the recorded lis pendens notice in connection with the Section 14 lawsuit, which Defendants Barbara Sue O'Neil and Richard K. O'Neil, individually and as Co-Trustees of O'Neil Trust, knew to be invalid, mailed by Loving County clerk to the O'Neil Trust's counsel;

j. partially-executed engagement agreements between Ridgefield, its state court co-plaintiffs, and the Joyce + McFarland law firm for the firm's joint representation of them in the abusive, extortionate state court litigation against DOH, mailed by the Joyce + McFarland law firm to the Count 3 Defendants; [13] and

k. fully-executed engagement agreements between Ridgefield, its state court co-plaintiffs, and the Joyce + McFarland law firm for the firm's

---

[13] To the extent that the Joyce + McFarland law firm did not send the partially-executed engagement agreements to an out-of-state Count 3 Defendant by mail, the firm sent it by interstate wire in violation of 18 U.S.C. § 1343.

representation of them in the abusive, extortionate state court litigation against DOH, mailed by the Count 3 Defendants to the Joyce + McFarland law firm.[14]

209. To the extent that the Count 3 Defendants or their agents did not personally deposit, take or receive, or cause the delivery of these mailings, they nonetheless caused such use of the mails in violation of 18 U.S.C § 1341, because they knew or could reasonably foresee that these mailings were necessary to execute the fraudulent and extortionate scheme to deprive DOH and Johnson of their property.

210. In violation of 18 U.S.C. § 1343, the Count 3 Defendants transmitted or caused to be transmitted by means of wire in interstate or foreign commerce, multiple writings, signals, and sounds for the purpose of executing or attempting to execute the enterprise's fraudulent and extortionate scheme to deprive Plaintiffs of their property.

211. The scheme to defraud was using the mineral deeds that the Count 3 Defendants actually or constructively knew conveyed Ridgefield no interest to create bogus claims of colorable title. The Count 3 Defendants then presented the invalid mineral deeds to the public, the courts, the oil and gas operators, and other persons, intending to deprive DOH and Johnson of their property by false, dishonest, and overreaching means.

212. The wire transmissions in violation of 18 U.S.C. § 1343 include:[15]

    a. telephone calls between Ridgefield or Tomahawk and the out-of-state Count 3 Defendants concerning Ridgefield's acquisition of mineral deeds that they knew to be invalid;

---

[14] To the extent that an out-of-state Count 3 Defendant did not send an executed version of the engagement agreement to the Joyce + McFarland law firm by mail, the Count 3 Defendant sent it by interstate wire in violation of 18 U.S.C. § 1343.

[15] The acts of wire fraud identified in subsections (a) through (d) apply to the following out-of-state Count 3 Defendants: Barbara Sue O'Neil, individually and as Co-Trustee of the O'Neil Trust; Richard K. O'Neil, individually and as Co-Trustee of the O'Neil Trust; Robert Pike; David Pike; Victor Green; Laura Holmes Peters; and Dawn Enright Gee. The acts of mail fraud identified in subsections (e) through (g) apply to the above-identified persons plus C. Megan Brenner.

b.  email communications concerning Ridgefield's acquisition of mineral deeds that the out-of-state Count 3 Defendants knew to be invalid, including emails attaching draft purchase agreements and mineral deeds, sent by Ridgefield or Tomahawk to the out-of-state Count 3 Defendants;

c.  emails attaching scanned copies of executed agreements for Ridgefield's purchase of interests that Ridgefield knew the out-of-state Count 3 Defendants did not own, sent by the out-of-state Count 3 Defendants to Tomahawk or Ridgefield;

d.  emails attaching scanned copies of executed mineral deeds that the out-of-state Count 3 Defendants knew to be invalid, sent by the out-of-state Count 3 Defendants to Tomahawk or Ridgefield;

e.  telephone calls between Ridgefield, Tomahawk, or Ridgefield's counsel and the out-of-state Count 3 Defendants concerning Ridgefield and its counsel's representation of them in the sham litigation against DOH;

f.  emails attaching partially-executed engagement agreements between Ridgefield, its state court co-plaintiffs, and the Joyce + McFarland law firm for the firm's joint representation of them in the abusive state court litigation against DOH, sent by the Joyce + McFarland law firm to the out-of-state Count 3 Defendants; and

g.  emails attaching fully-executed engagement agreements between Ridgefield, its state court co-plaintiffs, and the Joyce + McFarland law firm for the firm's representation of them in the abusive, extortionate state court litigation against DOH, sent by the out-of-state Count 3 Defendants to the Joyce + McFarland law firm.

213.  To the extent that the Count 3 Defendants or their agents did not personally transmit such writings, signals, or sounds, the Count 3 Defendants nonetheless caused such transmissions in violation of 18 U.S.C § 1343, because they knew or could reasonably

foresee that these transmissions were necessary to execute the fraudulent and extortionate scheme to deprive DOH and Johnson of their property.

214.   In addition to being independent acts of racketeering activity as defined in 18 U.S.C. § 1961(1), the Count 3 Defendants' acts of mail and wire fraud also violated 18 U.S.C. § 1951, because they committed them to induce or attempt to induce DOH to part with its property, knowingly and willfully by means of extortion, and their extortionate acts delayed, interrupted, or adversely affected interstate commerce.

215.   The Count 3 Defendants committed additional acts of attempted extortion in violation of 18 U.S.C. § 1951. These include their demands that DOH stipulate that they own part of the mineral interests at issue in exchange for dismissing their sham lawsuits, and their threats that Ridgefield would continue acquiring more invalid mineral deeds and filing more sham litigation on other DOH property if DOH did not capitulate—threats that Ridgefield made good on with its Martin County mineral deeds and litigation. The Count 3 Defendants' acts of attempted extortion also include the filing of their sham lawsuits and their abusive, bad-faith litigation activities, as set forth in paragraphs 124 through 156. The abusive litigation activities, independently and in conjunction with the broader RICO scheme, constitute predicate criminal acts of racketeering activity. The Count 3 Defendants committed all of these acts with the knowledge and subjective belief that they had no valid claim to the property at issue.

216.   All of the above-described predicate criminal acts were committed to obtain DOH's property, with its consent, induced by the wrongful use of actual and threatened economic injury. Specifically, the Count 3 Defendants threatened to, and did, wrongfully cloud Plaintiffs' title, force them to defend frivolous lawsuits, and cause the operators to suspend their revenues without interest. Therefore, the acts fall within the definition of "extortion" under 18 U.S.C. § 1951(b)(2).

217.   The Count 3 Defendants' acts of attempted extortion in violation of 18 U.S.C. § 1951 include the use of mailings and interstate wire transmissions. They also caused the

suspension of Plaintiffs' revenue payments sent by mail or interstate wire. The Count 3 Defendants' extortionate acts further interfered with Plaintiffs' contractual and business relationships with out-of-state oil and gas operators that conduct business in Texas, including Pioneer Natural Resources USA, Inc., a Delaware corporation; Continental Resources, Inc., an Oklahoma corporation with its principal office in Oklahoma; EOG Resources, Inc., a Delaware corporation; and COG Operating, LLC, a Delaware limited liability company. Accordingly, the Count 3 Defendants' acts of attempted extortion interfered with interstate commerce as required by 18 U.S.C. § 1951.

218.   The Count 3 Defendants acted with fraudulent intent because each knew that it or its predecessor had been divested in the tax foreclosures and that it could not convey any title to Ridgefield under the invalid mineral deeds. Their purpose was to further the fraudulent and extortionate scheme to force DOH and Johnson to convey part of their property to Ridgefield and the Count 3 Defendants.

219.   Each of the Count 3 Defendants' predicate criminal acts of wire fraud, mail fraud, and attempted extortion constitutes "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). Each of the Count 3 Defendants committed two or more of these acts of racketeering activity within the last ten years, therefore, each has engaged in a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

220.   Plaintiffs DOH and Craig A. Johnson have been injured as a result of the Count 3 Defendants' violations of 18 U.S.C. § 1962(c). Plaintiffs' injuries include, without limitation, the continuing title clouds on Plaintiffs' mineral interests, loss of income after the operators of Plaintiffs' interests suspended their revenues without interest, and the legal fees that Plaintiffs have been forced to expend in the state court litigation, all of which were intended consequences of the Count 3 Defendants' racketeering activities.

221.   Under 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold the amount of their damages, costs of suit, and reasonable attorneys' fees.

**Count 4 – Violation of 18 U.S.C. § 1962(d) by all Defendants**

222.  Count 4 is against all Defendants.

223.  In violation of 18 U.S.C. § 1962(d), Defendants conspired and agreed to commit each of the substantive RICO offenses identified as violations of 18 U.S.C. § 1962(b) and (c) in Counts 1, 2, and 3.

224.  Each Defendant knew of and agreed to the overall objective of these offenses, namely, to further the fraudulent and extortionate scheme to force DOH and Johnson to convey part of their property to Ridgefield and the Count 3 Defendants.

225.  Plaintiffs DOH and Craig A. Johnson have been injured as a result of Defendants' violations of 18 U.S.C. § 1962(d). Plaintiffs' injuries include, without limitation, the continuing title clouds on Plaintiffs' mineral interests, loss of income after the operators of Plaintiffs' interests suspended their revenues without interest, and the legal fees that Plaintiffs have been forced to expend in the state court litigation, all of which were intended consequences of Defendants' conspiracy to commit the racketeering activities.

226.  Under 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold the amount of their damages, costs of suit, and reasonable attorneys' fees.

**Count 5 – Violation of Tex. Civ. Prac. & Rem. Code § 12.002**

227.  Count 5 is against all Defendants.

228.  DOH acquired title to its mineral interests in and under Sections 3, 13, 14, 95, and 37 under the tax judgments, sheriff's deeds, and special warranty deed at issue. Johnson acquired title to its mineral interests in Section 95 as partial assignee of DOH.

229.  Defendants have made, used, presented, and filed in the public records multiple instruments purporting to convey or assert a claim against the mineral interests that DOH and Johnson own in and under Sections 3, 13, 14, 95, and 37, in violation of Tex. Civ. Prac. & Rem. Code § 12.002. These include, without limitation:

a. **Section 14 – Loving County**

    i. Mineral Deed from Gary Reed, as Trustee of the Reed Trust, to Ridgefield Permian Minerals, LLC, dated February 27, 2018, recorded at Instrument No. 2018-2189, Official Public Records of Loving County, Texas.

    ii. Mineral and Royalty Deed from Samuel Brenner to Ridgefield Permian Minerals, LLC, dated October 2, 2019, recorded at Instrument No. 2019-3866, Official Public Records of Loving County, Texas.

    iii. Mineral and Royalty Deed from Judith Abbott to Ridgefield Permian Minerals, LLC, dated September 5, 2019, recorded at Instrument No. 2020-0100, Official Public Records of Loving County, Texas.

    iv. Mineral and Royalty Deed from Ronald Abbott, Jr. to Ridgefield Permian Minerals, LLC, dated August 27, 2019, recorded at Instrument No. 2020-0101, Official Public Records of Loving County, Texas.

    v. Mineral and Royalty Deed from Barbara Sue O'Neil and Richard K. O'Neil, as Co-Trustee of the O'Neil Trust, to Ridgefield Permian Minerals, LLC, dated August 26, 2019, recorded at Instrument No. 2020-0102, Official Public Records of Loving County, Texas.

    vi. Memorandum of Oil, Gas and Mineral Lease from Ridgefield Permian Minerals, LLC, to Ridgefield Permian, LLC, dated July 20, 2019, recorded at Instrument No. 2020-1009, Official Public Records of Loving County, Texas.

    vii. Notice of Lis Pendens dated March 27, 2020, recorded at Instrument No. 2020-0986, Official Public Records of Loving County, Texas.

b. **Section 13 – Loving County**

    i. Mineral and Royalty Deed from H. Curtis Perry to Ridgefield Permian Minerals, LLC, dated May 26, 2020, recorded at Instrument No. 2020-1716, Official Public Records of Loving County, Texas.

    ii. Mineral and Royalty Deed from Jean Murray to Ridgefield Permian Minerals, LLC, dated October 23, 2020, recorded at Instrument No. 2020-1716, Official Public Records of Loving County, Texas.

    iii. Mineral and Royalty Deed from Ruth Ellen Holdcroft to Ridgefield Permian Minerals, LLC, dated October 30, 2020, recorded at

Instrument No. 2021-0180, Official Public Records of Loving County, Texas.

iv.  Mineral and Royalty Deed from Robert Pike to Ridgefield Permian Minerals, LLC, dated November 13, 2020, recorded at Instrument No. 2021-0105, Official Public Records of Loving County, Texas.

v.  Mineral and Royalty Deed from Alan Pike to Ridgefield Permian Minerals, LLC, dated November 13, 2020, recorded at Instrument No. 2021-0177, Official Public Records of Loving County, Texas.

vi.  Mineral and Royalty Deed from Kenneth Pike to Ridgefield Permian Minerals, LLC, dated November 13, 2020, recorded at Instrument No. 2021-0178, Official Public Records of Loving County, Texas.

vii.  Mineral and Royalty Deed from Anne Murray Middaugh to Ridgefield Permian Minerals, LLC, dated November 14, 2020, recorded at Instrument No. 2021-0106, Official Public Records of Loving County, Texas.

viii. Mineral and Royalty Deed from David Pike to Ridgefield Permian Minerals, LLC, dated November 24, 2020, recorded at Instrument No. 2021-0176, Official Public Records of Loving County, Texas.

ix.  Mineral and Royalty Deed from Joyce Murray Walker to Ridgefield Permian Minerals, LLC, dated January 27, 2021, recorded at Instrument No. 2021-0338, Official Public Records of Loving County, Texas.

c.  **Section 3 – Loving County**

i.  Mineral and Royalty Deed from Jim Hall to Ridgefield Permian Minerals, LLC, dated May 22, 2020, recorded at Instrument No. 2020-01532, Official Public Records of Loving County, Texas.

ii.  Mineral and Royalty Deed from Jerry Larson to Ridgefield Permian Minerals, LLC, dated May 29, 2020, recorded at Instrument No. 2020-01533, Official Public Records of Loving County, Texas.

iii.  Mineral and Royalty Deed from Albert Benjamin Ramsey to Ridgefield Permian Minerals, LLC, dated May 26, 2020, recorded at Instrument No. 2020-01531, Official Public Records of Loving County, Texas.

d. **Section 95 – Ward County**

    i. Mineral and Royalty Deed from Susan Kathleen Hirtz, Individually and as Personal Representative of the Estate of Jean Ola Reiswig, Deceased, and Juliana Early, to Ridgefield Permian Minerals, LLC, dated March 13, 2020, recorded at Instrument No. 2020-01680, Official Public Records of Ward County, Texas.

    ii. Mineral and Royalty Deed from Isaac G. Martinez, III to Ridgefield Permian Minerals, LLC, dated May 4, 2020, recorded at Instrument No. 2020-2655, Official Public Records of Ward County, Texas.

    iii. Mineral and Royalty Deed from Russell Smith to Ridgefield Permian Minerals, LLC, dated September 28, 2020, recorded at Instrument No. 2020-3970, Official Public Records of Ward County, Texas.

e. **Section 37 – Martin County**

    i. Mineral and Royalty Deed from Laura Holmes Peters to Ridgefield Permian Minerals, LLC, dated August 19, 2021, recorded at Volume 834, Page 134, Official Public Records of Martin County, Texas.

    ii. Mineral and Royalty Deed from John C. Dugan to Ridgefield Permian Minerals, LLC, dated August 6, 2021, recorded at Volume 834, Page 165, Official Public Records of Martin County, Texas.

    iii. Mineral and Royalty Deed from Patrick A. Dugan to Ridgefield Permian Minerals, LLC, dated August 6, 2021, recorded at Volume 834, Page 169, Official Public Records of Martin County, Texas.

    iv. Mineral and Royalty Deed from Victor P. Green to Ridgefield Permian Minerals, LLC, dated August 24, 2021, recorded at Volume 834, Page 156, Official Public Records of Martin County, Texas.

    v. Mineral and Royalty Deed from Ruth Green Ward to Ridgefield Permian Minerals, LLC, dated August 4, 2021, recorded at Volume 834, Page 159, Official Public Records of Martin Cow1ty, Texas.

    vi. Mineral and Royalty Deed from Rachael Green McKinney to Ridgefield Permian Minerals, LLC, dated August 10, 2021, recorded at Volume 834, Page 153, Official Public Records of Martin County, Texas.

    vii. Mineral and Royalty Deed from William F. Enright to Ridgefield Permian Minerals, LLC, dated September 27, 2021, recorded at

Volume 834, Page 137, Official Public Records of Martin County, Texas.

viii. Mineral and Royalty Deed from Clyde Edward Jackson to Ridgefield Permian Minerals, LLC, dated August 20, 2021, recorded at Volume 834, Page 162, Official Public Records of Martin County, Texas.

ix. Mineral and Royalty Deed from Bridget M. Knight to Ridgefield Permian Minerals, LLC, dated September 8, 2021, recorded at Volume 834, Page 150, Official Public Records of Martin County, Texas.

x. Mineral and Royalty Deed from Dawn E. Gee to Ridgefield Permian Minerals, LLC, dated October 1, 2021, recorded at Volume 834, Page 140, Official Public Records of Martin County, Texas.

xi. Mineral and Royalty Deed from Christopher D. Snyder to Ridgefield Permian Minerals, LLC, dated December 1, 2021, recorded at Volume 838, Page 754, Official Public Records of Martin County, Texas.

230.   Defendants made, presented, or used these instruments with knowledge that they are fraudulent and fail to convey or assert a valid claim against any real property interest.

231.   Defendants intended that the fraudulent instruments be given the same legal effect as valid conveyances of real property or valid claims against real property.

232.   Defendants' making, presentment, and use of each of the fraudulent instruments has caused Plaintiffs DOH Oil Company and Craig A. Johnson to suffer financial injury. Plaintiffs' injuries include, without limitation, the continuing title clouds on Plaintiffs' mineral interests, loss of income after the operators of Plaintiffs' interests suspended their revenues without interest, and the legal fees that Plaintiffs have been forced to expend in the state court litigation, all of which were intended consequences of the fraudulent filings.

233.   Under Tex. Civ. Prac. & Rem. Code § 12.002(b), each Defendant is liable for the greater of $10,000 per violation (i.e., each instance an instrument was made, used, presented, or filed in the county clerk, district clerk, or other public records) or the actual

damages caused by the violations, plus court costs, reasonable attorneys' fees, and exemplary damages.

234. As Ridgefield's corporate officers or agents, Kahle, Kerrigan, and Yerkovich are primarily liable for their own acts in violation of section 12.002, while Ridgefield as principal is also vicariously liable. Further, as Ridgefield's employees, Kahle, Kerrigan, and Yerkovich are individually liable for Ridgefield's violations section 12.002 because they knowingly participated in or had actual or constructive knowledge of the tortious conduct.

**Count 6 – Tortious Interference with Contract – Section 14**

235. Count 6 is against Defendants Aaron Kahle; Steve Kerrigan; Stephen Yerkovich; Ridgefield Permian Minerals, LLC; Barbara Sue O'Neil, individually and as Co-Trustee of the O'Neil Trust; Richard K. O'Neil, individually and as Co-Trustee of the O'Neil Trust; and C. Megan Brenner (the "Count 6 Defendants").

236. DOH has a valid and subsisting oil and gas lease covering its Section 14 mineral interest with EOG Resources, Inc. as Lessee.

237. By unlawfully clouding DOH's title, making fraudulent claims against DOH's real property interests, and committing acts in furtherance of the fraudulent and extortionate scheme that caused DOH's revenue payments to be suspended, the Count 6 Defendants willfully and intentionally committed acts that were calculated to interfere with DOH receiving the proceeds of its royalty under the lease.

238. The Count 6 Defendants had actual knowledge of the existence of DOH's oil and gas lease with EOG Resources, and they intended to interfere with DOH receiving the royalty due under the lease.

239. The Count 6 Defendants' acts proximately caused and are causing harm to DOH, resulting in actual damage and loss because they interfered with EOG Resources'

performance of the lease or caused EOG Resources to breach the lease by failing to make payments.

240.   As Ridgefield's corporate officers or agents, Kahle, Kerrigan, and Yerkovich are primarily liable for their own acts of tortious interference, while Ridgefield as principal is also vicariously liable. Further, as Ridgefield's employees, Kahle, Kerrigan, and Yerkovich are individually liable for Ridgefield's tortious interference because they knowingly participated in or had actual or constructive knowledge of the tortious conduct.

241.   DOH seeks exemplary damages because the injuries suffered by DOH resulted from the Count 6 Defendants' malice—they had a specific intent to cause a substantial injury to DOH.

## Count 7 – Tortious Interference with Real Property Rights – Section 14

242.   Count 7 is against Defendants Aaron Kahle; Steve Kerrigan; Stephen Yerkovich; Ridgefield Permian Minerals, LLC; Barbara Sue O'Neil, individually and as Co-Trustee of the O'Neil Trust; Richard K. O'Neil, individually and as Co-Trustee of the O'Neil Trust; and C. Megan Brenner (the "Count 7 Defendants").

243.   DOH has a valid and subsisting oil and gas lease covering its Section 14 mineral interest with EOG Resources, Inc. as Lessee; the lease gives DOH a royalty, which is a real property right.

244.   By unlawfully clouding DOH's title, making fraudulent claims against DOH's real property interests, and committing acts in furtherance of the fraudulent and extortionate scheme that caused DOH's revenue payments to be suspended, the Count 7 Defendants willfully and intentionally committed acts that were calculated to interfere with DOH receiving the proceeds of its royalty under the lease.

245.   The Count 7 Defendants had actual knowledge of the existence of DOH's oil and gas lease with EOG Resources, and they intended to interfere with DOH receiving the proceeds of its real property royalty interest.

246. The Count 7 Defendants' acts proximately caused and are causing harm to DOH, resulting in actual damage and loss.

247. As Ridgefield's corporate officers or agents, Kahle, Kerrigan, and Yerkovich are primarily liable for their own acts of tortious interference, while Ridgefield as principal is also vicariously liable. Further, as Ridgefield's employees, Kahle, Kerrigan, and Yerkovich are individually liable for Ridgefield's tortious interference because they knowingly participated in or had actual or constructive knowledge of the tortious conduct.

248. DOH seeks exemplary damages because the injuries suffered by DOH resulted from the Count 7 Defendants' malice—they had a specific intent to cause a substantial injury to DOH.

## Count 8 – Tortious Interference with Contract – Section 95

249. Count 8 is against Defendants Aaron Kahle, Steve Kerrigan, Stephen Yerkovich, and Ridgefield Permian Minerals, LLC (the "Count 8 Defendants").

250. Plaintiffs DOH and Johnson ratified a valid and subsisting oil and gas lease and executed division order contracts covering their Section 95 mineral interests with Jagged Peak Energy LLC. Parsley Energy Operations, LLC, succeeded Jagged Peak as operator of the Section 95 wells. Parsley was succeeded as operator by Pioneer Natural Resources USA, Inc., and Pioneer was succeeded by current operator Continental Resources, Inc.

251. By unlawfully clouding DOH and Johnson's title, making fraudulent claims against their real property interests, and committing acts in furtherance of the fraudulent and extortionate scheme that caused DOH and Johnson's revenue payments to be suspended, the Count 8 Defendants willfully and intentionally committed acts that were calculated to damage DOH and Johnson in their lawful business.

252. The Count 8 Defendants had actual knowledge of the existence of DOH and Johnson's royalties and the operators' agreements to pay DOH and Johnson, and they intended to interfere with DOH and Johnson receiving their royalties.

253. The Count 8 Defendants' acts proximately caused and are causing harm to DOH and Johnson, resulting in actual damage and loss because they interfered with Parsley, Pioneer, and Continental's performance of the contract or caused them to breach the contract by failing to make payments.

254. As Ridgefield's corporate officers or agents, Kahle, Kerrigan, and Yerkovich are primarily liable for their own acts of tortious interference, while Ridgefield as principal is also vicariously liable. Further, as Ridgefield's employees, Kahle, Kerrigan, and Yerkovich are individually liable for Ridgefield's tortious interference because they knowingly participated in or had actual or constructive knowledge of the tortious conduct.

255. DOH and Johnson seek exemplary damages because the injuries suffered by DOH and Johnson resulted from the Count 8 Defendants' malice—they had a specific intent to cause a substantial injury to DOH and Johnson.

**Count 9 – Tortious Interference with Real Property Rights – Section 95**

256. Count 9 is against Defendants Aaron Kahle, Steve Kerrigan, Stephen Yerkovich, and Ridgefield Permian Minerals, LLC (the "Count 9 Defendants").

257. Plaintiffs DOH and Johnson own real property royalty interests in Section 95, and the operators of the wells in Section 95 have been obligated to pay them the proceeds from the royalty.

258. By unlawfully clouding DOH and Johnson's title, making fraudulent claims against their real property interests, and committing acts in furtherance of the fraudulent and extortionate scheme that caused DOH and Johnson's revenue payments to be suspended, the Count 9 Defendants willfully and intentionally committed acts that were calculated to interfere with DOH and Johnson receiving the proceeds of their royalties.

259. The Count 9 Defendants had actual knowledge of the existence of DOH and Johnson's royalties, and they intended to interfere with DOH and Johnson receiving the proceeds of their royalties.

260. The Count 9 Defendants' acts proximately caused and are causing harm to DOH and Johnson, resulting in actual damage and loss.

261. As Ridgefield's corporate officers or agents, Kahle, Kerrigan, and Yerkovich are primarily liable for their own acts of tortious interference, while Ridgefield as principal is also vicariously liable. Further, as Ridgefield's employees, Kahle, Kerrigan, and Yerkovich are individually liable for Ridgefield's tortious interference because they knowingly participated in or had actual or constructive knowledge of the tortious conduct.

262. DOH and Johnson seek exemplary damages because the injuries suffered by them resulted from the Count 9 Defendants' malice—they had a specific intent to cause a substantial injury to them.

## Count 10 – Tortious Interference with Contract – Section 13

263. Count 10 is against Defendants Aaron Kahle; Steve Kerrigan; Stephen Yerkovich; Ridgefield Permian Minerals, LLC; Robert Pike; and David Pike (the "Count 10 Defendants").

264. DOH has a valid and subsisting oil and gas lease covering its Section 13 mineral interests with COG Operating, LLC, as Lessee.

265. By unlawfully clouding DOH's title, making fraudulent claims against DOH's real property interests, and committing acts in furtherance of the fraudulent and extortionate scheme that caused DOH's revenue payments to be suspended, the Count 10 Defendants willfully and intentionally committed acts that were calculated to interfere with DOH receiving the proceeds of its royalty under the lease.

266. The Count 10 Defendants had actual knowledge of the existence of DOH's oil and gas lease with COG Operating, and they intended to interfere with DOH receiving the royalty due under the lease.

267. The Count 10 Defendants' acts proximately caused and are causing harm to DOH, resulting in actual damage and loss because they interfered with COG's performance of the lease or caused EOG to breach the lease by failing to make payments.

268. As Ridgefield's corporate officers or agents, Kahle, Kerrigan, and Yerkovich are primarily liable for their own acts of tortious interference, while Ridgefield as principal is also vicariously liable. Further, as Ridgefield's employees, Kahle, Kerrigan, and Yerkovich are individually liable for Ridgefield's tortious interference because they knowingly participated in or had actual or constructive knowledge of the tortious conduct.

269. DOH seeks exemplary damages because the injuries suffered by DOH resulted from the Count 10 Defendants' malice—they had a specific intent to cause a substantial injury to DOH.

**Count 11 – Tortious Interference with Real Property – Section 13**

270. Count 11 is against Defendants Aaron Kahle; Steve Kerrigan; Stephen Yerkovich; Ridgefield Permian Minerals, LLC; Robert Pike; and David Pike (the "Count 11 Defendants").

271. DOH has a valid and subsisting oil and gas lease covering its Section 13 mineral interests with COG Operating, LLC, as Lessee; the lease gives DOH a royalty, which is a real property right.

272. By unlawfully clouding DOH's title, making fraudulent claims against DOH's real property interests, and committing acts in furtherance of the fraudulent and extortionate scheme that caused DOH's revenue payments to be suspended, the Count 11 Defendants willfully and intentionally committed acts that were calculated to interfere with DOH receiving the proceeds of its royalty under the lease.

273. The Count 11 Defendants had actual knowledge of the existence of DOH's oil and gas lease with COG Operating, and they intended to interfere with DOH receiving the proceeds of its royalty due under the lease.

274. The Count 11 Defendants' acts proximately caused and are causing harm to DOH, resulting in actual damage and loss.

275. As Ridgefield's corporate officers or agents, Kahle, Kerrigan, and Yerkovich are primarily liable for their own acts of tortious interference, while Ridgefield as principal is also vicariously liable. Further, as Ridgefield's employees, Kahle, Kerrigan, and Yerkovich are individually liable for Ridgefield's tortious interference because they knowingly participated in or had actual or constructive knowledge of the tortious conduct.

276. DOH seeks exemplary damages because the injuries suffered by DOH resulted from the Count 11 Defendants' malice—they had a specific intent to cause a substantial injury to DOH.

## Count 12 – Tortious Interference with Contract – Section 3

277. Count 12 is against Defendants Aaron Kahle; Steve Kerrigan; Stephen Yerkovich; Ridgefield Permian Minerals, LLC; Jim Hall; Donna Larson; and Albert Benjamin Ramsey (the "Count 12 Defendants").

278. DOH has a valid division order contract covering its Section 3 mineral interests with Headington Energy Partners, LLC.

279. By unlawfully clouding DOH's title, making fraudulent claims against DOH's real property interests, and committing acts in furtherance of the fraudulent and extortionate scheme that caused DOH's revenue payments to be suspended, the Count 12 Defendants willfully and intentionally committed acts that were calculated to interfere with DOH receiving the proceeds of its royalty that Headington had agreed to pay under the division order contract.

280. The Count 12 Defendants had actual knowledge of the existence of DOH's royalty and Headington's agreement to pay DOH, and they intended to interfere with DOH receiving its royalty.

281. The Count 12 Defendants' acts proximately caused and are causing harm to DOH, resulting in actual damage and loss because they interfered with Headington's performance of the contract or caused Headington to breach the contract by failing to make payments.

282. As Ridgefield's corporate officers or agents, Kahle, Kerrigan, and Yerkovich are primarily liable for their own acts of tortious interference, while Ridgefield as principal is also vicariously liable. Further, as Ridgefield's employees, Kahle, Kerrigan, and Yerkovich are individually liable for Ridgefield's tortious interference because they knowingly participated in or had actual or constructive knowledge of the tortious conduct.

283. DOH seeks exemplary damages because the injuries suffered by DOH resulted from the Count 12 Defendants' malice—they had a specific intent to cause a substantial injury to DOH.

**Count 13 – Tortious Interference with Real Property – Section 3**

284. Count 13 is against Defendants Aaron Kahle; Steve Kerrigan; Stephen Yerkovich; Ridgefield Permian Minerals, LLC; Jim Hall; Donna Larson; and Albert Benjamin Ramsey (the "Count 13 Defendants").

285. DOH owns a real property royalty interest in Section 3, and Headington Energy Partners, LLC is obligated to pay DOH the proceeds from the royalty.

286. By unlawfully clouding DOH's title, making fraudulent claims against DOH's real property interests, and committing acts in furtherance of the fraudulent and extortionate scheme that caused DOH's revenue payments to be suspended, the Count 13 Defendants willfully and intentionally committed acts that were calculated to interfere with DOH receiving the proceeds of its real property royalty.

287. The Count 13 Defendants had actual knowledge of the existence of DOH's royalty, and they intended to interfere with DOH receiving the proceeds of its royalty.

288. The Count 13 Defendants' acts proximately caused and are causing harm to DOH, resulting in actual damage and loss.

289. As Ridgefield's corporate officers or agents, Kahle, Kerrigan, and Yerkovich are primarily liable for their own acts of tortious interference, while Ridgefield as principal is also vicariously liable. Further, as Ridgefield's employees, Kahle, Kerrigan, and Yerkovich are individually liable for Ridgefield's tortious interference because they knowingly participated in or had actual or constructive knowledge of the tortious conduct.

290. DOH seeks exemplary damages because the injuries suffered by DOH resulted from the Count 13 Defendants' malice—they had a specific intent to cause a substantial injury to DOH

## Count 14 – Tortious Interference with Contract – Section 37

291. Count 14 is against Defendants Aaron Kahle; Steve Kerrigan; Stephen Yerkovich; Ridgefield Permian Minerals, LLC; Laura Holmes Peters; Victor P. Green; and Dawn Enright Gee (the "Count 14 Defendants").

292. DOH has a valid and subsisting oil and gas lease covering its Section 37 mineral interest with CrownRock, L.P., as Lessee.

293. By unlawfully clouding DOH's title, making fraudulent claims against DOH's real property interests, and committing acts in furtherance of the fraudulent and extortionate scheme that caused DOH's revenue payments to be suspended, the Count 14 Defendants willfully and intentionally committed acts that were calculated to interfere with DOH receiving the proceeds of its royalty under the lease.

294. The Count 14 Defendants had actual knowledge of the existence of DOH's oil and gas lease with CrownRock, and they intended to interfere with DOH receiving the royalty due under the lease.

295. The Count 14 Defendants' acts proximately caused and are causing harm to DOH, resulting in actual damage and loss because they interfered with CrownRock's

performance of the lease or caused CrownRock to breach the lease by failing to make payments.

296.  As Ridgefield's corporate officers or agents, Kahle, Kerrigan, and Yerkovich are primarily liable for their own acts of tortious interference, while Ridgefield as principal is also vicariously liable. Further, as Ridgefield's employees, Kahle, Kerrigan, and Yerkovich are individually liable for Ridgefield's tortious interference because they knowingly participated in or had actual or constructive knowledge of the tortious conduct.

297.  DOH seeks exemplary damages because the injuries suffered by DOH resulted from the Count 14 Defendants' malice—they had a specific intent to cause a substantial injury to DOH.

**Count 15 – Tortious Interference with Real Property – Section 37**

298.  Count 15 is against Defendants Aaron Kahle; Steve Kerrigan; Stephen Yerkovich; Ridgefield Permian Minerals, LLC; Laura Holmes Peters; Victor P. Green; and Dawn Enright Gee (the "Count 15 Defendants").

299.  DOH has a valid and subsisting oil and gas lease covering its Section 37 mineral interest with CrownRock, L.P., as Lessee; the lease gives DOH a royalty, which is a real property right.

300.  By unlawfully clouding DOH's title, making fraudulent claims against DOH's real property interests, and committing acts in furtherance of the fraudulent and extortionate scheme that caused DOH's revenue payments to be suspended, the Count 15 Defendants willfully and intentionally committed acts that were calculated to interfere with DOH receiving the proceeds of its royalty under the lease.

301.  The Count 15 Defendants had actual knowledge of the existence of DOH's oil and gas lease with CrownRock, and they intended to interfere with DOH receiving the proceeds of its real property royalty interest.

302. The Count 15 Defendants' acts proximately caused and are causing harm to DOH, resulting in actual damage and loss.

303. As Ridgefield's corporate officers or agents, Kahle, Kerrigan, and Yerkovich are primarily liable for their own acts of tortious interference, while Ridgefield as principal is also vicariously liable. Further, as Ridgefield's employees, Kahle, Kerrigan, and Yerkovich are individually liable for Ridgefield's tortious interference because they knowingly participated in or had actual or constructive knowledge of the tortious conduct.

304. DOH seeks exemplary damages because the injuries suffered by DOH resulted from the Count 15 Defendants' malice—they had a specific intent to cause a substantial injury to DOH.

## Count 16 – Civil Conspiracy

305. Count 16 is against all Defendants.

306. Each Defendant is a member of a combination of two or more persons comprising the RICO enterprise.

307. It was an object of the combination to accomplish an unlawful purpose, including the acts of mail fraud, wire fraud, and extortion identified in Counts 1 through 3, the violations of Tex. Civ. Prac. & Rem. Code § 12.002 identified in Count 5, and the acts of tortious interference identified in Counts 6 through 15.

308. It was also an object of the combination to accomplish a lawful purpose by unlawful means, namely, to force DOH and Johnson to convey part of their mineral interests to Ridgefield and its state court co-plaintiffs by implementing and executing their fraudulent and extortionate scheme.

309. Defendants had a meeting of the minds on each object or course of action of the combination.

310. Each Defendant committed an unlawful, overt act to further the combination's object or course of action.

311. Defendants' acts proximately caused and are causing harm to DOH and Johnson, resulting in actual damage and loss.

**Count 17 – Suit to Quiet Title – Section 14**

312. Count 17 is against Defendants Ridgefield Permian Minerals, LLC; Barbara Sue O'Neil, as Co-Trustee of the O'Neil Trust; Richard K. O'Neil, as Co-Trustee of the O'Neil Trust; and C. Megan Brenner (the "Count 17 Defendants").

313. DOH seeks to quiet title to its mineral interests in and under Section 14, Block C-26, PSL Survey, Loving County.

314. DOH has title through its sheriff's deed, which it purchased for value.

315. The Count 17 Defendants have filed multiple instruments in the public records purporting to convey an interest in or make a claim against the minerals that DOH acquired in the tax sale and sued DOH claiming that they hold superior title to the mineral interests covered by DOH's sheriff's deed.

316. The Count 17 Defendants' claims are, and have always been, invalid and wholly without merit. Further, a purchaser for value at a tax sale may conclusively presume the validity of the sale and takes title free and clear of any claim of a party with a prior interest in the property. The Count 17 Defendants may not set aside the tax sale or sheriff's deed because the time to do so has passed. Moreover, the right of redemption has also lapsed because it has been more than two years from the date of the tax sale.

317. DOH's title to the mineral interests is superior to that of the Count 17 Defendants.

318. The Count 17 Defendants' invalid claims constitute clouds on DOH's title that equity should remove.

319. Accordingly, DOH seeks a ruling from the Court quieting title to the Section 14 mineral interests in DOH.

**Count 18 – Suit to Quiet Title – Section 95**

320. Count 18 is against Defendant Ridgefield Permian Minerals, LLC.

321. DOH and Johnson seek to quiet title to its mineral interests in and under Section 95, Block 34, H&TC Ry. Co. Survey, Ward County.

322. DOH has title through its sheriff's deeds, which it purchased for value. Johnson has title as partial assignee of DOH.

323. Ridgefield has filed multiple instruments in the public records purporting to convey an interest in or make a claim against the minerals that DOH acquired in the tax sale and sued DOH and Johnson claiming that it holds superior title to the mineral interests covered by DOH's sheriff's deed.

324. Ridgefield's claims are, and have always been, invalid and wholly without merit. Further, a purchaser for value at a tax sale may conclusively presume the validity of the sale and takes title free and clear of any claim of a party with a prior interest in the property. Ridgefield may not set aside the tax sale or sheriff's deed because the time to do so has passed. Moreover, the right of redemption has also lapsed because it has been more than two years from the date of the tax sale.

325. DOH and Johnson's title to the mineral interests is superior to that of Ridgefield.

326. Ridgefield's invalid claims constitute clouds on DOH and Johnson's title that equity should remove.

327. Accordingly, DOH and Johnson seek a ruling from the Court quieting title to the Section 95 mineral interests in DOH and Johnson.

**Count 19 – Suit to Quiet Title – Section 13**

328. Count 19 is against Defendants Ridgefield Permian Minerals, LLC; Robert Pike; and David Pike (the "Count 19 Defendants").

329. DOH seeks to quiet title to its mineral interests in and under Section 13, Block C-26, PSL Survey, Loving County.

330. DOH has title through its sheriff's deed, which it purchased for value.

331. The Count 19 Defendants have filed multiple instruments in the public records purporting to convey an interest in or make a claim against the minerals that DOH acquired in the tax sale and sued DOH claiming that they hold superior title to the mineral interests covered by DOH's sheriff's deed.

332. The Count 19 Defendants' claims are, and have always been, invalid and wholly without merit. Further, a purchaser for value at a tax sale may conclusively presume the validity of the sale and takes title free and clear of any claim of a party with a prior interest in the property. The Count 19 Defendants may not set aside the tax sale or sheriff's deed because the time to do so has passed. Moreover, the right of redemption has also lapsed because it has been more than two years from the date of the tax sale.

333. DOH's title to the mineral interests is superior to that of the Count 19 Defendants.

334. The Count 19 Defendants' invalid claims constitute clouds on DOH's title that equity should remove.

335. Accordingly, DOH seeks a ruling from the Court quieting title to the Section 13 mineral interests in DOH.

**Count 20 – Suit to Quiet Title – Section 3**

336. Count 20 is against Defendants Ridgefield Permian Minerals, LLC; Jim Hall; Donna Larson; and Albert Benjamin Ramsey (the "Count 20 Defendants").

337. DOH seeks to quiet title to its mineral interests in and under Section 3, Block C-27, PSL Survey, Loving County.

338. DOH has title through its sheriff's deed, which it purchased for value.

339. The Count 20 Defendants have filed multiple instruments in the public records purporting to convey an interest in or make a claim against the minerals that DOH

acquired in the tax sale and sued DOH claiming that they hold superior title to the mineral interests covered by DOH's sheriff's deed.

340. The Count 20 Defendants' claims are, and have always been, invalid and wholly without merit. Further, a purchaser for value at a tax sale may conclusively presume the validity of the sale and takes title free and clear of any claim of a party with a prior interest in the property. The Count 20 Defendants may not set aside the tax sale or sheriff's deed because the time to do so has passed. Moreover, the right of redemption has also lapsed because it has been more than two years from the date of the tax sale.

341. DOH's title to the mineral interests is superior to that of the Count 20 Defendants.

342. The Count 20 Defendants' invalid claims constitute clouds on DOH's title that equity should remove.

343. Accordingly, DOH seeks a ruling from the Court quieting title to the Section 3 mineral interests in DOH.

**Count 21 – Suit to Quiet Title – Section 37**

344. Count 21 is against Defendants Ridgefield Permian Minerals, LLC; Laura Holmes Peters; Victor P. Green; and Dawn Enright Gee (the "Count 21 Defendants").

345. DOH seeks to quiet title to its mineral interests in and under Section 37, Block 38, Township 1 North, Martin County.

346. DOH has title through its special warranty deed, which it purchased for value.

347. The Count 21 Defendants have filed multiple instruments in the public records purporting to convey an interest in or make a claim against the minerals that DOH acquired in the tax sale and sued DOH claiming that they hold superior title to the mineral interests covered by DOH's special warranty deed.

348. The Count 21 Defendants' claims are, and have always been, invalid and wholly without merit. Further, a purchaser for value at a tax sale may conclusively

presume the validity of the sale and takes title free and clear of any claim of a party with a prior interest in the property. The Count 21 Defendants may not set aside the tax sale or special warranty deed because the time to do so has passed. Moreover, the right of redemption has also lapsed because it has been more than two years from the date of the tax sale.

349. DOH's title to the mineral interests is superior to that of the Count 21 Defendants.

350. The Count 21 Defendants' invalid claims constitute clouds on DOH's title that equity should remove.

351. Accordingly, DOH seeks a ruling from the Court quieting title to the Section 37 mineral interests in DOH.

## VI. Jury Demand and Prayer

352. Plaintiffs demand a trial by jury on all issues so triable.

353. For the above stated reasons, Plaintiffs DOH Oil Company and Craig A. Johnson pray that, upon final hearing, the Court enter a judgment:

    a. Finding Defendants liable for violating 18 U.S.C. § 1962(b), (c), and (d);

    b. Finding Defendants liable for violating Tex. Civ. Prac. & Rem. Code § 12.002;

    c. Finding Defendants liable for tortious interference with contract;

    d. Finding Defendants liable for civil conspiracy;

    e. Quieting title to the subject mineral interests in DOH and Johnson;

    f. Awarding DOH and Johnson actual damages;

    g. Awarding DOH and Johnson threefold the amount of their damages, costs of suit, and reasonable attorneys' fees under 18 U.S.C. § 1964(c);

    h. Awarding DOH and Johnson exemplary damages and attorneys' fees under Tex. Civ. Prac. & Rem. Code § 12.002(b);

i.     Awarding DOH and Johnson exemplary damages under Tex. Civ. Prac. & Rem. Code § 41.007;

j.     Awarding DOH and Johnson court costs; and

k.     Granting DOH and Johnson such other relief in law or in equity to which they may be entitled.

Date: March 16, 2022

*Respectfully Submitted,*

**Freeman Mills PC**
115 W. 7th St., Suite 1225
Fort Worth, Texas 76102
(682) 316-1677
(682) 316-1676 FAX


By: */s/ Graham K. Simms*
      **Graham K. Simms**
      State Bar No. 24060610
      gsimms@freemanmillspc.com

      **Attorneys for DOH Oil Company and Craig A. Johnson**